## Sallie J. Thompson, et al. v. First National Bank's Receiver.

## J. M. Thompson v. First National Bank's Receiver.

(Decided January 28, 1919.)

### Appeals from Muhlenberg Circuit Court.

1. Judgment—Setting Aside Default Judgment.—The setting aside of a default judgment, at the same term, at which it is rendered, is a matter, within the judicial discretion of the court, and is not governed by the provisions of the Code, which relate to the granting of a new trial, after the term, at which the judgment was rendered, upon the grounds of casualty or misfortune.

2. Judgment—Setting Aside Default Judgment.—The principle which should guide the judicial discretion of the court,. in setting aside a default judgment, at the term at which it was rendered, is the determination as to whether the ends of justice will be subserved, unless the laches of the applicant have been such as will in justice close the ear of the court.

HUBERT MERIDETH for appellants.

TAYLOR, EAVES & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing in each case.

These appeals, by agreement of the parties, have been ordered to be heard and determined, together. In the first styled action, John A. Best, as the receiver of the First National Bank, of London, Ky., recovered a judgment, by default, against the appellants, Sallie J. Thompson and J. M. Thompson, for the sum of $1,500.00, with interest at 6% per annum, from September 5, 1913, and the further sum of $2,750.00, with interest thereon at 6% per annum, from September 25, 1913, both of which sums, with their accrued interest, amounting, at the time, the judgment was rendered, to about $5,259.00. The lia-

bility of appellants, it was alleged, in the petition, arose from the execution of two notes for the sums stated, to the First National Bank.

In the second styled action, the receiver of the First National Bank, recovered a judgment, by default, against the appellant, J. M. Thompson, upon a promissory note, which, it was alleged, he had executed to one Fitzgerald, who had transferred it to the bank, in the sum of $750.00, with the accrued interest, at 6% per annum, from the 2nd day of May, 1914, amounting, principal and interest, at the time of the rendition of the judgment, to the sum of about $900.00. Thus, the judgments, by default, in favor of the receiver, against J. M. Thompson, amounted to the sum of $6,159.00, and that, in favor of the receiver, against Sallie J. Thompson, amounted to the sum of $5,259.00. The petitions, in each of the actions, was filed on August 17, 1917, and the process served on August 23, 1917, which including the day of service, made the service of the process just ten days, before the first day of the Muhlenberg circuit court. When actions, at law, which were appearances, at that term, were called on the first day of the term, for the purpose of ascertaining, if there were defenses, J. M. Thompson was in the court room, but, whether under circumstances, that enabled him to hear the call of these cases, does not appear, and he states, in an affidavit, that he did not know of the rendition of the judgments, until several days thereafter, and just before the making of the affidavit. No one answering at the call of these cases, the judgments were rendered, for the amounts sued for. On the 12th day of September, thereafter, which was the ninth day of the term, the appellants entered motions to set aside each of the judgments, and with the motions, tendered their verified answers to the petitions. In the case against them, jointly, the appellants filed an answer, in which, Sallie J. Thompson denied, that she ever executed or delivered, either of the notes sued on, or authorized any one to execute or deliver them for her, and J. M. Thompson plead, that he had, long before the institution of the suit, paid and satisfied the notes to the bank. In the suit, against him, alone, J. M. Thompson, interposed a plea of payment of the note to the bank, before the institution of the suit. In support of the motions to set aside the judgments, the

appellants filed their affidavits. The statements in the affidavits of both appellants, was to the effect, that at the time, the summons was served upon them, they fully intended to defend the actions against them, but, that Sallie J. Thompson was then preparing to go to visit and assist her mother, who was a very aged woman, and at the time, very ill, at her home, in Laurel county, Ky.; that the appellants were husband and wife, and the wife relied upon the husband to attend to her business affairs, and that it was agreed, between them, that the husband would at once employ an attorney, at Greenville, where the courts of the county sat, to attend to the defense of the cases, for both, and relying upon this arrangement, the wife went to visit her mother, under the belief, that her defense would be interposed, at the proper time, and that she could return, when it would be necessary for her presence in court, and when she returned to her home on Saturday, the 10th day of September, she learned, for the first time, that a judgment had been rendered against her. The appellants resided, in Muhlenberg county, and J. M. Thompson deposed, that several days before the first day of the term of court, he communicated with the attorney, agreed upon, over the telephone, for the purpose of securing his services, for the defenses of the suits, but, that he was a party to several other suits, which were then being litigated, and in which the attorney represented him, and that he had a conference, of some considerable extent, with the attorney with regard to suits, in which he was engaged, and when it was done, he fully believed, that he had mentioned these actions to him, and had secured his services for their defense, and thereafter, remained under this delusion, until he received information, that the judgments, by default, had been rendered, when he was informed, by the attorney, that he had failed to make any arrangements, with him; that he was at Greenville on the first day of the term, to further consult with the attorney, but, on account of the attorney's engagements, could not get an opportunity to do so, except a hurried interview with him, at the adjournment of the court, at the noon hour, and did not have an opportunity to mention these cases, but, believing, that he had, previously, done so, he relied upon the attorney to take such steps as were necessary to make their defense. The statements made by appellants, in their affidavits, were uncontradicted. The court over-

ruled the motion to set aside the judgment and refused
to permit the tendered answers, in each case to be filed.
The defenses presented are, upon the faces of the an-
swers, unquestionably, meritorious, and if true, it is im-
possible to conceive of how the ends of justice will be
furthered, by requiring these appellants to pay the large
sums, which they do not owe. Of course, a party can
not engage in mere trifling with the courts, and then be
heard to complain, that something has been done, in the
course of administration of justice, which could not have
occurred, but for his unqualified laches. It is difficult,
however, to conclude, that a defendant, with a meritori-
ous defense, would, knowingly, and purposely, neglect
to interpose his defense, at the price of over six thou-
sand dollars, for his pure neglect. The grounds for set-
ting aside the judgments and permitting defense to be
made, would be, unquestionably, insufficient and inade-
quate, if a party was seeking a new trial, upon the
ground of casualty and misfortune, under the provisions
of the Civil Code. The motions were, however, made
and answers offered, at the same term, at which the
judgments were rendered. The grounds presented, are
somewhat exceptional, when the defenses offered, are
considered. A different rule prevails, when a motion is
seasonably made to set aside a default judgment, during
the same term, at which it was rendered, from the rule,
which prevails, when a new trial is sought after the term,
at which it was rendered, on the grounds of casualty or
misfortune or a new trial when both litigants have par-
ticipated. In the instant case, before the motions were
made to set aside the judgments, no other rights had
arisen to intervene, and if the answers are true, the ap-
pellee had recovered judgments, amounting to $6,159.00
to no part of which, was he justly entitled. In Southern
Ins. Co. v. Johnson, 140 Ky. 486, this court, discussing
the principles, which apply, when a motion is made to
set aside a judgment, by default, at the same term, at
which it was rendered, said: ''The power of the court
to set aside a default judgment at the term, at which it
was rendered, is inherent, and not dependent on sections
of the Code, regulating the granting of new trials.
This power is not to be exercised capriciously or granted
as a favor, or withheld as a rebuke for shortcoming in
practice. It is exercised as a judicial discretion. It will
not depend upon whether the party applying, can show

himself strictly entitled to the legal relief under Code provisions regulating the granting of new trials on grounds of casualty and misfortune. But, it will depend on whether the ends of justice will be furthered, and, in a measure, whether the party complaining, has been guilty of laches, such as to close the ear of the court to his application." As no other rights had arisen, between the rendition of the judgments and the motions, the delay causing no apparent inconvenience or loss of rights to the plaintiff, and it being more reasonable to conclude, that the laches arose from a cause other than purposeful neglect, the ends of justice will be better subserved by a trial upon the merits, than to allow a party to take from the others, a large sum of money, to which he is not entitled, and we, therefore, are of the opinion, that the court should have set aside the judgments and permitted the answers to be filed.

The contention, that the judgments were void, because, the plaintiff did not comply with section 120, Civil Code, by either filing the notes sued on with the petitions, or else set forth the reasons for the failure, is not tenable. If the defendants desire the notes to be filed, or reasons for the failure, they may secure a rule against the plaintiff, to file the notes, or show sufficient cause for the failure. The judgments are therefore reversed, and the causes remanded, for proceedings consistent with this opinion, but the circuit court, will not set aside the judgments appealed, from, until the appellants have paid all the costs, of the actions, both in the circuit court, and in this court, up to the filing of the mandates, in the circuit court, as under the circumstances, the relief granted, is upon that condition.