## Stewart v. Commonwealth.

(Decided February 2, 1923.)

### Appeal from Union Circuit Court.

1. Judgment—Default Judgment—Setting Aside.—The power of the court to set aside a default judgment at the term at which it was

rendered is inherent, and not dependent upon sections of the Code regulating the granting of new trials. It is a judicial discretion and depends upon whether or not the ends of justice will be furthered thereby, and, in a measure, upon whether or not the complainant has been guilty of laches.

2.   Judgment—Default Judgment—Setting Aside.—Held that the court abused a sound discretion in refusing to set aside a default judgment against defendant under which he was sentenced to a year's imprisonment in jail and the payment of $1,000.00 fine, where the defendant voluntarily appeared shortly after the trial was concluded and before court adjourned, and it appears from affidavits filed in support of his motion that he had a defense he desired to present, and his tardiness in appearing to answer the charge against him was not due to purposeful neglect.

HENSON & TAYLOR for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Section 2739g-53 of Kentucky Statutes makes it a misdemeanor for the driver of an automobile, after an accident on a highway, to fail immediately to stop, ascertain the extent of any injury or damage done, and render such assistance as may be needed, including the carrying of the persons injured to the nearest medical aid, if request is made therefor. The punishment provided for such a failure is a fine of not less than $10.00 nor more than $2,000.00, or imprisonment in the county jail for not exceeding one year, or both.

Appellant was indicted for a violation of this provision of the statute at the June, 1922, term of the Union circuit court. He was arrested, and gave bond in the sum of $400.00 for his appearance at the next November term of the court to answer the indictment. The case was called for trial on the 17th day of the November term, and the defendant failing to appear, was tried and convicted and his punishment fixed at a fine of $1,000.00 and confinement in the county jail for one year.

Upon the same day, but after the verdict had been rendered against him, the defendant appeared in court and was remanded to jail. Thereafter, during the same term of court, he filed motion to set aside the judgment and grant him a new trial, in support of which he filed affidavits of himself and three others, and no counter affidavits were filed by the Commonwealth. His motion

for a new trial having been overruled he has prosecuted this appeal.

Upon the trial, the Commonwealth proved by C. N. Duval and his wife, Mrs. Obie Duval, who were the only witnesses introduced, that on June 20, 1922, as they were driving in a buggy on the Sturgis road near Morganfield, the defendant, driving an automobile in which there were three other colored persons, attempted to pass their buggy; that they had driven the buggy to the side of the road to enable defendant to pass, that he was driving at a rapid rate of speed and the fender of his car struck the axle of the rear wheel of their buggy, tore the wheel off the buggy and overturned it; that the occupants of the buggy, Mr. and Mrs. Duval and their two children of tender years, were thrown out upon the ground, and Mrs. Duval and one of the children were injured thereby; that defendant stopped, but did not get out of his car, that the three other colored men did get out, and Mr. and Mrs. Duval asked them to take them and their children to the nearest medical aid, which was at Morganfield, about half a mile distant; that defendant failed to do so, although the other three colored men also requested him to do it; that the other three men then got in the car with defendant and drove off, leaving Duval, his wife and children on the roadside, where they were required to wait about twenty minutes until another, passing in his automobile, took them in and carried them to Morganfield.

In support of his motion for a new trial, the defendant, by his own affidavit and that of two of the men that were in the automobile with him at the time of the accident, contradicted the testimony of Mr. and Mrs. Duval to the effect that Stewart did not get out of his car, or that either of the Duvals requested defendant to take them back to Morganfield, and stated that he offered and they declined to permit him to do so.

In explanation of his absence at the trial, the defendant states in his affidavit that he did not know his case had been set for trial on November 17, and that he thought he would be notified of the date of the trial when it had been fixed; that he lived in Morganfield, the county seat, and was at home on the day of the trial; that when he received information through a friend that his case had been called for trial, he immediately hurried to the court house, but learned upon his arrival there that the trial had been concluded and the verdict returned into

court; that he had not had a subpoena issued for his witnesses, who were within the jurisdiction of the court, because he did not know that the day for the trial of his case had been fixed.

A mere recital of the facts makes it entirely clear that the grounds asserted for setting aside the judgment and permitting defense to be made would be wholly insufficient and inadequate if the defendant were seeking a new trial upon the ground of unavoidable casualty or misfortune, under the provisions of the Code. A different rule prevails, however, when a motion is made to set aside a default judgment during the term at which it was rendered, from the rule which prevails when a new trial is sought after the term at which it was rendered on the grounds of casualty or misfortune, or a new trial when both litigants have participated. Southern Insurance Co. v. Johnson, 140 Ky. 486, 131 S. W. 270; Thompson v. First National Bank's Receiver, 183 Ky. 69; Union Gas & Oil Co. v. Kelly, 194 Ky. 153; Baker v. Commonwealth, 195 Ky. 847.

In the first of these cases, this court said:

"The power of the court to set aside a default judgment at the term at which it was rendered is inherent, and not dependent upon sections of the Code regulating the granting of new trials. This power is not to be exercised capriciously or granted as a favor or withheld as a rebuke for shortcomings in practice; it is exercised as a judicial discretion. It will not depend upon whether the party applying can show himself strictly entitled to the legal relief under Code provisions regulating the granting of new trials on grounds of casualty and misfortune. But it will depend on whether the ends of justice will be furthered, and in a measure whether the party complaining has been guilty of laches such as to close the ear of the court to his application."

This statement of the rule was quoted with approval in the second and third cases cited above, and it was approved and applied in the last of these, a criminal case. Hence it is the rule to be applied here, and whether or not a new trial should have been granted therefore depends primarily upon whether the ends of justice would have been furthered thereby, and, in a measure only, upon whether defendant was guilty of laches. That he was guilty of laches there can be no doubt. But the vital question is, will the ends of justice be furthered under the pe-

culiar circumstances of. this case by granting or denying appellant a new trial?

The record shows that defendant is a negro, and his course of action shows even more strongly than his affidavit that he had no appreciation whatever of what the law required of him if he desired to avail himself of the right to defend the action. He has further shown that he had a defense and witnesses to support it, which of course a jury might or might not have believed, and which he desired to present; that his failure to do so was not due to purposeful neglect, but rather to ignorance. Thus deprived of the opportunity to present his defense when his case was called for trial, and having voluntarily appeared in court while it was yet in session and but an hour or two too late, should he have been given an opportunity despite his tardy appearance to have his defense heard and passed upon by a jury, or did the court exercise a sound discretion in refusing him that privilege because of his temporary default

A new trial would have caused no delay, imposed no injustice upon any one, and for his delay in presenting his defense the court could have adequately punished defendant by imposing the accrued costs upon him, or by fine for contempt if that had been deemed necessary. Upon the other hand, the consequences of a denial of a new trial are that defendant must pay a fine of $1,000.00 and be confined in the county jail for one year, or if he cannot pay the fine he will have to stay in jail for more than two and one-half years. Under the circumstances, can it be said that these severe consequences are the result of defendant's wilful failure to obey the statute, or are they not more probably the result largely, if not entirely, of his laches due to his ignorance of court procedure? If the latter, his punishment is certainly out of all proportion to his offense, and, in any event, it is our confident judgment that the ends of justice would have been better served in this case by granting a new trial rather than by a denial thereof, and that defendant's "laches" was not "such as to close the ear of the court to his application," but such at most as called for punishment by the court.

Wherefore, the judgment is reversed, with directions to grant defendant a new trial upon payment of the costs of the action that had accrued at the time he entered his motion for a new trial.