## Carr Creek Community Center, Inc., v. Home Lumber Co. et al.

Feb. 17, 1939.

FAULKNER & FAULKNER and JOHN W. CAUDILL for appellant.

W. W. REEVES and H. H. SMITH for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant, a non-profit, educational corporation maintained by contributions from citizens of this and other states, will be referred to as the "Center." It owns property on Carr's Fork in Knott County, and in 1928 built a school house and teacher's dormitory on its property. In May 1932 appellee filed petition alleging that during 1928 and 1929 it furnished lumber and supplies to appellant to the amount of $2,206.78, certain credits leaving a balance of $1,288.33, for which judgment was prayed.

The Lumber Company alleged that the "material was sold and delivered to the defendant in wholesale quantities, he being at the time a contractor engaged in the erecting of a school building at the Carr Creek Community Center, and perhaps other buildings."

Later appellee filed amended petition, asking that the Center be made defendant, and it was brought before the court. This amendment alleged that when plaintiff sold the materials to Marion Francis, "said Center through its officers Marion Francis, his brother, W. T. Francis, and Miss Hume, acting for the Center, directed the defendant to purchase the material * * * set forth in the petition," and that same was used by the Center in the erection of buildings on its property.

It was further alleged that in purchasing the materials defendant acted as contractor for the Center, or as its agent or officer, "this plaintiff does not know which is true, and it therefore alleges in the alternative that whether he acted as contractor or agent or officer in the purchase of the materials, actually used by the Center. * * * that at least to the extent of the value as

alleged in its original petition, the property of the * * * Center was enhanced in value, the materials being accepted and used by the * * * Center in the conduct of its corporate purposes.''

It is then alleged that other ''executives'' of the Center, had knowledge of the sale and delivery of the materials to Marion Francis, and notice that the balance claimed was unpaid. That ''if it is true, as plaintiff alleged in the alternative, the defendant Marion Francis was acting for the * * * Center, the said * * * Center promised and agreed to pay the balance due; on the other hand if he was not acting for the * * * Center, then there was an implied promise to pay the amount claimed, by reason of the enhanced value of the property of said * * * Center, and the construction of the improvements thereon.''

Defendants filed demurrer to the petition as amended, and on September 1, it was sustained as to the Center. No further ruling was made. On December 22, 1933, appellee filed its second amended petition and sought to have, and had W. T. Francis made a party defendant.

In this amendment the Lumber Company reaffirmed such allegations of its petition as amended, not inconsistent ''herewith'' and alleged that at the time it sold the materials to Marion Francis it did not know that he was a director and agent of the Center, but that since, it has learned that he and his brother W. T. Francis, were acting as its agents. That at said time and since, Will Francis was an officer and agent of the Center, which ''caused the said Marion Francis and the said Will Francis to purchase the materials described, for the purpose of constructing certain improvements on the Center's property;'' that although Marion purchased the materials, he bought same at the special instance and request of the Center, which actually received and used the same. No relief was asked as against W. T. Francis.

On March 31, 1934, because of lack of time for trying docketed cases, this case together with others, was set for hearing at a special term to be held on May 21, 1934. On May 22, it was shown that the regular judge was disqualified to hear the instant case (and others) and the chief justice of this court was requested to and

did appoint a special judge to hear the cases, which were set for May 28, 1934, at which time demurrer to the second amended petition in this case was filed.

Rather peculiarly, though it may be no more than a typographical error, the order filing this demurrer reads: "Comes the plaintiff and filed demurrer to the amended petition herein, and submitted on demurrer." This was followed by notation "came the defendant produced and filed answer herein." The demurrer mentioned in the foregoing order is not made a part of the record, nor is it shown upon whose motion the cause was submitted on demurrer. This was followed by an order showing that "came today the defendant and filed answer and cross-petition, to which Carr Creek Community Center and W. T. Francis object." One reading these orders would conclude that plaintiff had demurred to its own petition, and all defendants (to the amended petition) had answered. We point these orders out as evidencing some unexplained irregularities in the proceedings.

The pleading referred to was denominated answer and cross-petition of Marion Francis, and as we observe it presents a peculiar situation. In the first paragraph of the pleading Marion Francis denied that he individually and for himself bought of plaintiff any lumber or supplies, and that he individually agreed to pay, or paid, otherwise than set out "hereinafter."

In a second paragraph "further answering plaintiffs' petition and for cross-petition against the Center and W. T. Francis," he alleges that Marion and W. T. Francis and Margaret Hume, contracted with Marion to superintend the buildings to be erected on the Center's property. For his services as superintendent, and for buying the necessary materials, the Center was to pay him the sum of $5 per day; that the stone and woodwork was to be done in the name of Marion Francis, and the lumber and materials used were to be bought in his name for the Center.

He says that it was mutually agreed that he was to employ a stone mason to do the stone work, and he was to superintend the building and to purchase materials; to keep accurate account of every day he thus employed himself. He further says that the agreement (with himself) and the other two officers, was that he was to be

known to the public as "contractor of said buildings," the work to be done in his name, when in fact and truth he was only superintending the work for the Center. He says the Center "through this defendant paid a part of appellee's account" for supplies; that he kept an account of expenses and labor, and paid out the money for same as the Center furnished it. Further, that while the lumber was bought from plaintiff by him, it was so bought for the Center, as their agent and superintendent.

In a third paragraph he says he was to get $5 per day for his services; he worked 171½ days; the Center paid him part, leaving a balance due of $256.78, for which he asked judgment against the Center, and that plaintiff's petition as to him be dismissed. As between Marion Francis and appellant, this pleading presented a triable cause; an issue was formed. As to the cross-petition against the Center, it presented no cause, or perhaps was improperly filed, as the court correctly adjudged in dismissing it without prejudice, no doubt having in mind subsection 3 of Section 96 of the Civil Code of Practice.

This pleading was filed on May 30, 1934, and there was neither demurrer nor responsive pleading by the plaintiff or Center, though the Center and W. T. Francis objected to its filing, and upon which objection the court has not yet ruled.

From the date of filing of this answer and cross-petition until a judgment was entered, this case had rough sledding. It appears that the attorney who had first represented Center had later been elected judge of the circuit court, hence disqualified to make orders in the case. The case with others was again certified to our chief justice for appointment of a special judge, and was set down on the docket for July 30, 1934. On this day the case was submitted on Center's motion to require plaintiff to file itemized account. This plaintiff did. Also on motion to require "defendant Marion Francis to file copy of contract (which he had not alleged was in writing) as referred to in his answer and cross-petition." This motion the court sustained and Francis responded, saying; that he did not have the contract; that he had no copy, or knowledge of its whereabouts, "unless it was filed as an exhibit in the case lately pending wherein Joe Domino was plaintiff,"

and he and the Center were defendants. He said he had searched his papers, and failed to find it, but believes "a copy of the original can be had from the records of the above mentioned suit, and he has asked the clerk to look through the files in the above mentioned case, and he looked through the office files himself."

Nothing happened until August 7, 1934, when an order was entered (upon whose motion is not shown) reciting: "The issue in this case being made up, this cause is continued until Nov. 1934." At this time the Center's objection to the filing of the answer was open, and Marion Francis had not produced his alleged contract with the Center.

No order appears to have been made at the November 1934 term. On March 29, 1935, case was continued until the May term 1935, but not set for a day. Nothing happened at the May term, and on July 9, 1935, this and other cases were certified for special judge, and set down for July 29, 1935. An order shows that it was continued to November 1935 term, and set for December 11, 1935. From the foregoing it will appear that although an order of August 7, 1934, had recited "the issue in this case being made up," there was no showing of effort to submit at that term, nor for three intervening terms.

On December 12, 1935, an order recites: "This cause having been submitted to the court upon the pleadings, proof and exhibits," the court entered judgment against Marion Francis and Center for $1,288.33, with interest from October 31, 1928. This, notwithstanding that Marion Francis had joined issue with the plaintiff, and his answer and cross-petition, in so far as it affected the rights of plaintiff, presented an issue ordinarily triable by a jury. This is so, because in his second paragraph he pleads defensive matter in answer to plaintiff's petition, and for cross-petition against Center. The court, holding that it was not good as a cross-petition against the Center, did not rule upon its sufficiency as an answer to plaintiff's petition, and only dismissed it without prejudice as to the Center.

We come now to the real matter which we are to consider: The court's action in denying to appellant a reopening of the case after judgment of December 12th. On December 19, at the same term of court, the Center filed "motion and petition" to set aside the judgment

because it was rendered by a special judge at a time when the cause had not been submitted, and while there was still a motion pending asking that Marion Francis be required to file the contract set up in his answer and cross-petition; that said judge at the time of undertaking to render judgment did not have before him all the record in the case; that it was an ordinary action, triable by a jury; that no jury was empaneled and no trial had. It was stated that because of the pendency of said motion, the pleadings had not been completed, and this defendant was taken by surprise upon learning of the judgment.

Appellant claimed a valid defense which it would present if afforded opportunity. For its defense it denied the allegations of Francis' answer and cross-petition, claiming that he was an independent contractor, and saying it never assumed the payment of any of said account. It asked that the motion and petition be treated as its petition to set aside the judgment, and its allegations be treated as answer to the Francis cross-petition.

On March 13, 1936, the cause, with others, was certified for the appointment of a special judge, and the causes assigned to the same term and set for March 23, 1936, and on March 25, there was spread in part the following order: .

"The plaintiff reserving the entry of its appearance filed its motion to quash the summons issued on the motion and petition, and the Center having elected to treat the motion and petition as a motion for a new trial, the court adjudged 'although there appears of record no order filing it same is overruled' to which ruling the Center excepted, prayed and was granted an appeal."

The question presented for our determination is, whether or not the court exercised sound discretion in overruling appellant's motion for a reopening of the case. In discussing this question we note that while the document filed by appellant was denominated "motion and petition," on which it prayed that its motion be treated as a petition to set aside the judgment, and as an answer to a portion of Francis' pleading, when it came up for submission, the Center elected to have the document treated as a motion for a new trial, to which there was no objection, and it was so treated.

Since the overruling order recited: "It is adjudged by the court that said motion and petition, endorsed filed December 19, 1935, although there appears of record no order filing same, be and the same is overruled," it might be reasonably concluded, as is suggested by counsel, the motion was overruled on the stated ground, since if the court had considered the entire record, this lack of order might not have been of considerable influence in thus adjudging. Without discussing the effect of a lack of order filing, we may point to the fact that there appears nowhere in the record any objection to its consideration, on account of any technical omission. Upon observation it is found that there were several such omissions; there was no separate order showing submission for judgment, but these matters are immaterial, except to demonstrate some of the rather unusual circumstances attending the proceeding.

This judgment of December 12, 1935, was a default judgment. In respect to the court's action it stands on different ground from a judgment deliberately rendered after completion of pleadings, issues formed, and counsel heard. The applicable rule, thoroughly established, is well stated in the case of Union Oil & Gas Co. v. Kelly, 194 Ky. 153, 238 S. W. 384, 385:

"The power of the trial court to set aside a default judgment at the term at which it was rendered is inherent, and not dependent on sections of the code regulating the granting of new trials. This power is not to be exercised capriciously or granted as a favor, or withheld as a rebuke for shortcomings in practice. It is exercised as a judicial discretion. It will not depend upon whether the party applying can show himself strictly entitled to the legal relief under the code provisions regulating the granting of new trials on grounds of casualty and misfortune. But it will depend on whether the ends of justice will be furthered, and in a measure whether the party complaining has been guilty of laches such as to close the ear of the court to his application."

A reference to the following cases will demonstrate that the foregoing rule has been consistently adhered to and applied: Clay County Board of Education v. Lewis, 187 Ky. 231, 218 S. W. 716; Algee v. Algee, 168 Ky. 362, 182 S. W. 197; Thompson v. First Nat. Bank's Receiver, 183 Ky. 69, 208 S. W. 320; Corbin Building

Supply Co. v. Martin, 239 Ky. 272, 39 S. W. (2d) 480; Clements v. Kell, 239 Ky. 396, 39 S. W. (2d) 663; Farris v. Ball, 257 Ky. 683, 79 S. W. (2d) 7; Welch v. Mann's Ex'r, 261 Ky. 470, 88 S. W. (2d) 1.

These cases hold that the court, in passing on motions to vacate judgments entered in default, is not guided or controlled by the provisions of Civil Code of Practice, Sections 340 and 518. It may be submitted that were this other than a default judgment it would be difficult to hold that the appellant was entitled to relief under Section 518, though relief might have been granted under subsection 1 of Section 340 of the Civil Code of Practice, but we need not speculate. We are clearly of the opinion that the court, in the exercise of a sound discretion, should have set aside the judgment of December 12, and allowed appellant to present its defense.

There was an objection pending to the filing of the pleading (or a portion of it) by Marion Francis. The court had sustained the motion of appellant to file the contract mentioned by Marion Francis in his answer and counterclaim, and this had not been done. It may be that appellant was guilty of laches in failing to press the matter, but it had the right to have it filed, since, as may be gathered from the entire record, it might have formed the basis of a controlling defense to appellee's claim. Even though it be deemed guilty of laches, a court having before it the entire record, and reviewing it carefully, under ordinary circumstances, would not have entered this default judgment. This expression of belief may lend some weight to the assertion that the court did not have before it the entire record, when the judgment was rendered.

We need not call attention to other irregularities in the proceedings, as our statement of the case shows that there were more or less irregularities throughout, and this coupled with the fact that the case was bounced around from pillar to post, awaiting the appearance of special judges, has caused us to give the closest scrutiny to the record, in so far as it involves the matter before us.

As a prerequisite to the exercise of the rule laid down by courts, in passing on motions to vacate default judgment, it must appear that the movant is able to present a valid defense, so we must look to its motion to

ascertain whether or not, if sustained, the movant could benefit by a new trial.

In the first place, it has been pointed out that appellant averred that Francis, in the purchase of supplies, contracted independently. If this were true it would be substantial defensive matter. And at this point it may be noted that appellee, though its balance due on September 14 (presumably 1928), was $1,288.33, did not avail itself of the right to secure a statutory lien, as Domino had done, in his building the stone work on the same job. Francis v. Domino, 251 Ky. 255, 64 S. W. (2d) 571.

It is noted that appellant in setting up its claimed defense, denied the allegations of the answer and cross-petition of Marion Francis. The second paragraph, undertaking to hold appellant liable, was a preamble to paragraph 3, which undertook to set up his cross action against appellant. A reading of the orders and pleadings demonstrates that in correctly dismissing Francis' cross-petition, the court only struck down paragraph 3, leaving so much of paragraph 2 as might constitute a defense to appellee's amended petition.

At the outset we were forced to observe two motions, one of which was sustained, and the other passed to the merits. A motion to file with this record the one in this court in the case of Francis v. Domino, supra, was sustained. This was a case between Domino, Francis and the Center. Domino is not a party to this appeal, nor was he such in the case tried below, hence we doubt the propriety of giving consideration to that record in passing on the questions presented.

However, the impropriety of considering the record does not necessarily prevent us from observing this court's opinion in the Francis v. Domino case, mentioned above, a reading of which discloses that the matter therein discussed was the erection of one of the buildings on Center's property by Domino, under a subcontract with Marion Francis. It must be assumed that this court's conclusion that the Center had contracted with Marion Francis to erect the buildings at a stipulated sum was based on record facts.

As to the second motion, which asked that statements or affidavits of the former attorney for Center and of W. T. Francis be stricken, it is sustained for the

simple reason that not having been before the lower court, or made part of the record before us on this appeal, they cannot be considered.

On the whole case, after giving it the most careful attention, we express the opinion that the court below should have set aside the judgment of December 12, and permitted the appellant to plead. The court, in the exercise of that broad discretion manifested by our holdings in the cases cited, would have met the ends of justice in granting a new trial. Marion Francis is not appealing-

Judgment reversed and cause remanded for new trial consistent with this opinion.