## Slater v. Hatfield, et al.

(Decided May 12, 1922.)

### Appeal from Pike Circuit Court.

1. Husband and Wife—Conveyances by Husband and Wife.—A married woman cannot convey her lands by deed unless her husband join therein or has theretofore conveyed same to her grantee. (Section 506, Kentucky Statutes.)
2. Reformation of Instruments—Evidence.—To authorize the reformation of a deed the evidence of mutual mistake must be clear and convincing.

3. Pleading—Traverse of Record.—Where by agreement the pleadings of one of several plaintiffs are traversed of record, a joint reply of all plaintiffs is traversed in its entirety.

4. Husband and Wife—Consideration for Void Deed by Married Woman.—A valuable consideration paid to a married woman for her land at the time she executed a void deed therefor, will support her later valid deed for the same land.

5. Husband and Wife—Signatures.—The signature of a person made by another in his presence and by his direction is valid and this rule applies to a married woman as well as others.

6. Husband and Wife—Certificates of Grantors in Deed.—By reason of section 3760, Kentucky Statutes, a county clerk's certificate that the grantors acknowledged before him in his county a deed bearing their signatures, to be their act and deed, can not be attacked in other than a direct proceeding against the officer or his sureties, except by allegation of fraud in the party benefited thereby or mistake on the part of the officer.

7. Acknowledgment—Presumption that Officer Performed Duty.—Where officer's certificate of acknowledgment is not so attacked, and the evidence only shows that the acknowledgment was taken and certified by the officer on the same day the signatures were erased, it will be presumed that the officer performed his official duty in a legal manner rather than in an illegal manner, and took and certified the acknowledgment before the signatures were erased.

8. Deeds—Erasure of Signatures.—Title to the land vested in the grantee when the deed therefor was signed, acknowledged and delivered by the grantors, and the subsequent erasure of the grantors' signatures was insufficient to invalidate the deed and reinvest the title in grantors

P. B. STRATTON for appellant.

J. C. CANTRILL and JOHN D. CARROLL for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part and reversing in part.

In 1876 John and Martha Chaney jointly acquired title to the 187 acres of land involved in this action. In 1890 Martha died intestate, survived by her husband, three sons and six daughters. On November 1, 1898, John Chaney and three of his married daughters, Virginia Stepp, Mary Bruester and Elizabeth White, and on March 15, 1901, another married daughter, Louise Smith, for valuable considerations paid to each, executed deeds to appellant, W. J. Slater, for their interests in the land. The husbands of these four daughters did not join in these deeds and had not theretofore conveyed to appel-

lant, and it is conceded that the deeds were ineffectual to pass the married daughters' interest in the lands. Farley v. Stacey, 177 Ky. 109, 197 S. W. 636; section 506, Kentucky Statutes.

One daughter, Ella Blankenship, did not at that time convey her interest to Slater, and the remaining daughter, Dolly, died November 13, 1898, an infant and without issue, and, as is agreed, her undivided one-ninth interest in the mother's half interest descended to her eight surviving brothers and sisters, which made the interest of each of them an undivided one-sixteenth of the entire tract subject to the father's curtesy; while Slater certainly owned the father's undivided one-half and curtesy in the other half of the land.

Slater acquired in some manner not disclosed by the record, from the three sons, their entire interest in the land. In 1918 Mary Bruester, now Thompson, and Elizabeth White, with their husbands, executed new deeds to Slater, and Ella Blankenship, who had not heretofore attempted to convey her interest, executed a deed, in which her husband joined, to Slater, all of which purport to convey to him the parties' entire interests in the land.

In December, 1918, Louise Smith, then and now Hatfield, with her husband, signed, acknowledged and delivered in the manner hereafter to be described, a deed to Slater for her entire interest in the land.

Ignoring these later deeds and alleging that each was the owner of an undivided one-sixteenth interest in the land, Louise Hatfield, Mary Thompson, Ella Blankenship and Elizabeth White instituted this action against Slater for partition, to recover rent and damages for waste, and to enjoin further threatened waste. Virginia Stepp was made a party defendant, and by answer and cross petition she also asserted ownership of an undivided one-sixteenth interest in the land, and sought against Slater the same relief as her sisters.

Slater answered alleging that John Chaney was still alive, setting up his deed from him and the later deeds executed by the plaintiffs, and claiming thereunder right of possession and title to the entire tract.

By a joint reply plaintiffs and the cross petitioner asserted that the deeds from Louise, Mary, Ella and Virginia were intended to convey only the interests inherited by the grantors from their sister, Dolly, and asked that

each be reformed to correct the alleged mistake by which they appeared to convey their entire interests therein. The execution and delivery of the deed from Louise Hatfield was denied, and it was asked that same be cancelled and held for naught. The reply was traversed of record.

Upon trial the court adjudged that Virginia Stepp and Louise Hatfield owned an undivided one-sixteenth interest each and Elizabeth White an undivided one-eighteenth interest in the land, and each was given judgment for her proportionate share of $175.00 for waste done, and defendant was enjoined from committing further waste. Slater was adjudged the owner of the remaining interest in the land and entitled to possession of the whole tract during the life of John Chaney, and it was adjudged that Ella Blankenship and Mary Thompson owned no interest therein.

Appellant admitted cutting and selling trees of the value of $175.00 off the land, and that he had authorized the opening of new coal mines thereon, hence the judgment was correct if the question of title was properly decided, and the only question we need consider upon this appeal by Slater is whether or not the court erred in adjudging Virginia Stepp, Louise Hatfield and Elizabeth White an interest in the land.

1. There was really but little effort below and none whatever here to combat the ownership by Mrs. Stepp of an undivided one-sixteenth interest in the land, since it is admitted her husband did not join in the only conveyance thereof she ever attempted. Hence the judgment as to her must be affirmed.

2. As Elizabeth White's conveyance in which her husband joined is attacked only upon the ground that it mistakenly conveys her entire interest in the land instead of only so much as she inherited from her sister, Dolly, as it is alleged the parties intended, the only question with reference to her interest is whether or not the court erred in reforming her deed to comply with her contention.

We may pass without deciding the question argued by counsel that the reformation should not have been granted because it was improperly sought by reply instead of amended petition, since we are clearly of the opinion there was no evidence whatever of a mistake in the deed, much less the clear and convincing evidence that is always required to reform a written instrument. Counsel is mis-

taken in the statement that Slater in his testimony admitted the deed was intended to pass only the interest the grantor inherited from her sister Dolly. He was asked and answered but one question with reference to this deed as follows: Q. "Why did you get another deed from the plaintiff, Elizabeth White, Mr. Slater?" A. "Well, because she had an interest in the heir that died and I bought her interest in that, that's how come that."

This is simply a statement of his reason for procuring this deed, but it does not indicate, and clearly he did not mean to say as he was not asked, that the deed as drawn did not correctly state the intention of the parties at the time it was drawn. He had previously purchased and paid for the interest Mrs. White had inherited from her mother, but the deed executed therefor was invalid, and it was the natural thing for both parties to do, in the execution of the deed for the later acquired interest, to make it cover the entire interest that the grantee had purchased and paid for, and this the deed does.

Mrs. White did not testify at all, and no one testified for her or that there was any mistake of any kind in this deed.

Counsel for appellee is also mistaken in the statement that Mrs. White's plea of mistake was not denied. The record shows that by agreement of the parties, the allegations of the pleadings of Mrs. Stepp, undenied by the pleadings, were traversed of record; and, as the plea of mistake is asserted only in the joint reply of Mrs. Stepp and the plaintiffs, it is obvious that that pleading in its entirety was traversed by the agreed order. It was so treated upon the trial below as is evident from the fact that the same pleas asserted in the same way by Mrs. Thompson and Mrs. Blankenship, and not otherwise traversed, were denied by the trial court. The court therefore erred in adjudging Mrs. White an interest in the land.

It is first insisted that there was no consideration to support the deed from Mrs. Hatfield in which her husband joined, but this contention is clearly without merit, since she admits that the defendant bought and paid her for her interest in the land at the time she executed the deed in which her former husband did not join, which was on March 15, 1901, or more than two years after the death of her sister Dolly, which occurred November 13, 1898.

That payment was a good and sufficient consideration for this deed, which conveys exactly the same interest as the earlier deed ineffectually attempted to convey.

The principal controversy, however, with reference to this interest is whether or not the deed was in fact executed by Mrs. Hatfield. With reference thereto the following facts are clearly established: In November, 1919, the defendant had the deed prepared and gave it to his brother, Thomas Slater, a deputy county clerk, for the purpose of having him get Mrs. Hatfield and her husband to execute same. Thomas Slater presented this deed to Mrs. Hatfield and her husband at their home and requested them to execute it. Mrs. Hatfield said she could not write but that her husband could, and the clerk told her that it would be all right if her husband would sign her name for her, and this the husband did in her presence, as well as signing his own name thereto; Mrs. Hatfield then handed the deed to the clerk, who delivered it to the defendant.

About a month later, the defendant requested the clerk to have Mrs. Hatfield place her mark on the deed where her husband had signed her name. The clerk returned to the home of the Hatfields with the deed on or about December 19th, 1918, and requested Mrs. Hatfield to make her mark on the deed, which she declined to do until her husband returned to the house. When he came in he insisted that the clerk stay for dinner, and after dinner he procured the deed from the clerk to take it into the kitchen to his wife, and returning in a few minutes delivered it to the clerk with the statement that his wife didn't want to sign it then but would do so in a few days. The clerk put the deed in his pocket and did not discover until he had left the house that the signature of both Mr. and Mrs. Hatfield had been scratched off of the deed during the time Mr. Hatfield had been out of the room with it. He then delivered the deed to defendant who had it recorded, although it then bore no signatures, but it did bear the clerk's certificate that it had been regularly acknowledged before him on December 19th, 1918, by the Hatfields, to be their act and deed.

It is first urged that the deed was not signed by Mrs. Hatfield because of her failure to make her mark where her name was signed by her husband, but this position can not be sustained.

This court held in Middleton's Admr. v. Hensley, 21 R. 703, 52 S. W. 974, that the signature of a person made by another in his presence and by his direction is valid; and, that this rule applies to a married woman was held in Godsey v. Virginia I. C. & C. Co., 28 R. 657, 82 S. W. 386.

The next and chief insistence is, that even if signed by her, her signature, as well as her husband's, was erased before the deed was acknowledged, and that it is therefore void. In support of this position we are referred to Helton v. Asher, 103 Ky. 730, 46 S. W. 22; Janny v. Dills, 3 Ky. Opns. 492, but these cases only hold that validity cannot be imparted to a deed, which has never been signed by the grantors, by the clerk's certificate that they had acknowledged same to be their act and deed, which is not the case we have by any means. Here the deed was signed by the grantors and delivered to the grantee, and if the clerk's certificate is to be accepted as true, was acknowledged by them to be their act and deed.

There is no allegation of fraud or mistake with reference to the clerk's certificate, and, as is frankly conceded by Mrs. Hatfield's counsel, its verity cannot be attacked in this proceeding because of section 3760 of Kentucky Statutes, which provides that unless in a direct proceeding against an officer or his surety, the verity of his certificate about a proper matter cannot be attacked except upon the allegation of fraud or mistake.

It is insistently urged, however, that the evidence conclusively shows that the deed was acknowledged by the grantors after the erasure of their signatures, and that this case, therefore, falls within the principles announced in Helton v. Asher, and Janny v. Dills, *supra*.

The invalidity of the deed in the Helton case, and presumably in the Janny case, was predicated primarily upon the fact that since it had not been signed at all, it was within the statute of frauds, whereas this deed was certainly signed, but assuming without deciding that the deed would have been void if acknowledged by the parties after their signatures had been erased by them, we are yet unable to sustain appellees' contention.

There is no evidence whatever as to whether the acknowledgment was taken, and the officer's certificate attached to the deed, before or after the erasure of grantors' signatures, unless it be furnished by the certificate itself, since no one was asked or pretended to testify with reference thereto. The certificate does not furnish such evidence, since it only shows that the deed

was acknowledged and the certificate thereof made on December 19th, 1918, which, from the evidence, seems to have been the same day upon which the signatures were erased from the deed.

Since the verity of the officer's certificate, as we have seen, cannot be attacked in this proceeding, it must be accepted as true that the deed was acknowledged on December 19th, 1918, as certified, and it is mere matter of speculation or presumption whether it was done before or after the signatures were erased.

Can we assume, under such circumstances, that the officer took and certified the acknowledgment after the signatures had been erased, or must we presume that he did this before the erasure? The answer to this question, it seems to us, must depend upon which course was in accordance with his official duty, since it is elementary law that an officer is presumed to have performed an official duty in a legal rather than an illegal manner in the absence of proof to the contrary. Assuming that the deed would have been void, as appellees contend, if the acknowledgment was taken by the clerk after the signatures had been erased, it would follow that the acknowledgment was illegal and void; but if he took the acknowledgment before the erasures, his act in taking the acknowledgment was certainly valid.

Hence we think it must be presumed, in the absence of evidence to the contrary, that the clerk took and certified appellees' acknowledgment to this deed before the signatures were erased. This being true, the title then vested in the grantee, and the subsequent erasure of their signatures by the grantors did not reinvest the title in them or affect the validity of the deed. Austin v. Moore, 188 Ky. 832, 224 S. W. 467; City National Bank v. Anderson, 189 Ky. 487, 225 S. W. 361. We therefore conclude that the chancellor erred in declaring this deed void.

Wherefore the judgment is affirmed as to Mrs. Stepp and reversed as to Mrs. White and Mrs. Hatfield, with directions to dismiss their petitions.

The appellant will pay one-third of the costs in this appeal and Mrs. White and Mrs. Hatfield will each pay one-third thereof, but there will be deducted from the circuit clerk's fee for transcript the sum of $14.70, the amount taxed for 49 pages of depositions which he did not index.