## Harlan-Kellioka Coal Company v. Kelly.

(Decided May 20, 1924.)

### Appeal from Harlan Circuit Court.

1. Corporations—Under Resolution Officers Held Not Entitled to Salary in Absence of Net Earnings.—Under resolution on minute book giving officers of corporation certain salaries "to be paid out of the earnings of the company," held, that officers were not entitled to salaries in a year in which the corporation had no net earnings.

2. Evidence—Parol Evidence Inadmissible to Alter or Vary Terms of Corporate Record.—Integrity of corporate record not being attacked, parol evidence was inadmissible to alter or vary its terms.

CLAY & CARTER for appellant.

HALL, JONES & LEE for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

W. B. Kelly sued the Harlan-Kellioka Coal Company, alleging that it owed him the sum of $5,100.00 salary, as president, from November 1, 1917, to April 1, 1919, at the rate of $3,600.00 per year. In the second paragraph he alleged that from April 1, 1919, to January 1, 1920, he was vice-president of that company on an agreed salary of $4,000.00 per year, which sum it agreed and promised to pay, and that it was indebted to him in the sum of $3,000.00 on that item.

The company traversed, and pleaded a store account as a counterclaim. At the conclusion of the evidence the court gave a peremptory instruction for the defendant on the first item. The other issues were submitted to the jury, who returned a verdict for the plaintiff for the $3,000.00 claimed, and a verdict for defendant for the $250.00 set up in the counterclaim. The company appeals from the judgment for the $3,000.00 but no cross-appeal is prosecuted, so that the claim set up in the first paragraph of the petition is now eliminated.

It appears from the evidence that the company was incorporated in October, 1919, its stock being owned by W. B. Kelly, his son, Owen Kelly, and J. J. Creech. Afterwards C. I. Dawson became interested, and the stock was divided equally between Kelly, Creech and Dawson, and this arrangement existed up to April 1, 1919. On that

date Dawson and Creech sold their interest to E. T. Kirk, George L. Ballou and C. N. Bolinger, Kirk acquiring one-third of the stock in the company and Ballou and Bolinger one-sixth each. During all the time previous to this Kelly had acted as president and general manager, and Creech as secretary and treasurer. Kelly had been paid as general manager a stipulated salary and had exercised full control of the mine; he also claims that he and Creech had agreed on each receiving a salary of $3,600.00 a year as president and secretary-treasurer, respectively, though none of this was ever paid.

After the reorganization on April 1, 1919, and up to December 31, 1919, Kelly acted as general manager and was paid therefor the sum of $150.00 per month. On that date he sold all his stock to Kirk and his associates.

At the meeting on April 1, 1919, Kirk was elected president and Kelly vice-president, Bolinger secretary and Ballou treasurer.

In addition to other business the following resolution was placed upon the minute book:

> "It is ordered by the board of directors that the salary of the president be fixed at $4,000.00 per year, the salary of the vice-president at $4,000.00 per year, the salary of the secretary at $2,000.00 per year, and the salary of the treasurer at $2,000.00 per year, said salaries to be paid out of the earnings of the company."

It further appears that during those nine months the company had no net earnings, but on the contrary lost something over ten thousand dollars, though it has since made money, the amount not being shown.

There is nothing in the pleading or proof to show that any of the officers named in the resolution ever performed any services in such offices, or that any part of the salaries were ever paid to any of them; in fact Kelly does not even plead that he accepted the office or that it was intended for him to perform service in consideration of the salary.

On the other hand it appears that the amount voted as salaries was to be distributed between the stockholders in proportion to the amount of stock held by each, without any reference to service. Further the concluding language is significant: "Said salaries to be paid out of the earnings of the company."

The natural inference is that this meant net earnings, for it is not reasonable to suppose that the directors contemplated a distribution of the *corpus* under the guise of salaries. They may have anticipated large profits and wished to avoid income tax, or they may have undertaken to distribute the earnings as they arose in lieu of dividends, but in either view, we are of the opinion that it was intended that the salaries, if any, should be paid out of the net earnings of the year during which they accrued, and as there were no net earnings during the year 1919 no such salaries were payable. Such seems to have been the construction given the contract by the parties, as neither claimed any salary during the year. Kirk testifies that this was the understanding of the directors at the time the resolution was adopted, while Kelly's testimony is somewhat different, but the integrity of the record is not attacked, therefore parol evidence is inadmissible to alter or vary its terms.

Other questions were raised, but it is unnecessary to make reference to them.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.