## Morris v. Gilliam.

(Decided March 26, 1926.)

### Appeal from Warren Circuit Court.

1. Reformation of Instruments.—To obtain reformation of executed written contract, mistake must be mutual, and pleading must so allege.

2. Reformation of Instruments.—Mutual mistake must be proved by clear, convincing, and satisfactory evidence to warrant reformation.

3. Reformation of Instruments.—In suit for reformation of executed written contract, proof on each side practically balancing other is insufficient to authorize judgment.

4. Good Will—Seller of Automobile Agency Canceled by Employer and Restored to Seller, Held Not to have Violated Contract Not to Compete with Buyer.—Where buyer of automobile agency knew it was subject to cancellation by company, seller accepting agency from company after cancellation, held not to have violated contract, even if containing provision not to compete with buyer so long as he desired to remain in business, such desire being necessarily dependent upon will of company.

RODES & HARLIN for appellant.

G. D. MILLIKEN for appellee.

Opinion of the Court by Judge Thomas—Reversing.

Prior to October 17, 1921, the appellant and defendant below, W. C. Morris, operated a garage in the city of Bowling Green, Kentucky, and was also local agent for the sale of Hupmobile and Stutz automobiles. On that day he sold his business, with all stock and fixtures on hand, to appellee and plaintiff below, J. S. Gilliam. The contract was in writing and the price agreed to be paid was the amount of the invoice of the stock, plus carriage, and a stipulated sum for two new Hupmobiles owned by plaintiff and which were in his garage, the total purchase price amounting to slightly more than $6,000.00. The contract also included the sale of defendant's local agency for the two above makes of automobiles, the most valued of which was the agency for the Hupmobile, and which plaintiff averred and testified was the chief inducement for the purchase. After the written contract had been executed the parties went to the city of Louisville and had the state distributor of local agencies for the two automobiles to transfer the Bowling Green agency to plaintiff, which was done in writing. In it there was a stipulation that it might be cancelled at any time by giving notice. Plaintiff put in charge of the business his two sons and *he* immediately went to Florida, where he spent the winter and returned early in the spring of 1922. In the meantime, only two or three Hupmobiles had been sold by plaintiff's sons, who were operating the local agency at Bowling Green, and the state distributor for that machine, who was nothing more than the state agent for its sale, became dissatisfied and so notified plaintiff, and soon thereafter Mr. Boyd, president and manager of the state agency, went to Bowling Green and cancelled plaintiff's agency contract for the sale of Hupmobiles at that place and in that territory, and placed it with another under the same character of contract, all of which occurred about April 1, 1922. That person proved to be unsatisfactory and Boyd approached plaintiff to accept the agency. After considerable persuasion he agreed to do so, and this equity action was thereafter filed against him by plaintiff seeking to reform the contract of sale to him of the garage and of the local agency, by inserting therein by parol proof a stipulation that defendant was "not to in any way interfere or engage in this business during the time that plaintiff was engaged therein," which it was averred was omitted from the contract "by

oversight and mistake.'' It was further averred in the petition that defendant had violated the contract as made and as sought to be reformed, by reason of which plaintiff sustained damages in the sum of $4,000.00, for which he prayed judgment. The answer denied the material averments of the petition, and upon submission, after evidence taken, the court did not expressly order a reformation of the contract, but did so in effect by rendering judgment in favor of plaintiff in the sum of $2,100.00, and complaining of it defendant prosecutes this appeal.

It is the universal rule, consistently followed by this court, that in order to obtain a reformation of an executed written contract on the ground of mistake it must be a mutual one and not a mistake of one of the parties alone, and the pleading seeking the reformation must so allege, either expressly, or aver facts from which the mutuality of the mistake is necessarily inferable. Pickrell and Craig Co. v. Castleman Blakemore Co., 174 Ky. 1; Stark v. Suttle, 181 Ky. 646; Commercial Auto v. Brandies Machinery and Supply Co., 198 Ky. 155; and Denny v. Crabtree, 194 Ky. 185. There was no such express averment contained in any of plaintiff's pleadings and it is doubtful if such mutuality of the alleged mistake was necessarily inferable from the allegations as made.

But, however that may be, the rule is equally universal that in order to reform such a contract the proof must be *clear, convincing and satisfactory* that the mutual mistake was in fact made before a court will reform the contract. That rule is stated as the correct one by all text writers upon the subject, as well as approved and applied by all courts, including this one. Cook v. Day, 168 Ky. 282; Johnson v. Gadberry, 174 Ky. 66; Central Life Insurance Co. v. Robinson, 181 Ky. 511; Nichols v. Nichols, 182 Ky. 21; Hauger v. International Trading Co., 184 Ky. 798; Foxwell v. Justice, 191 Ky. 754; Farar v. Eli, 195 Ky. 31; Slater v. Hatfield, 195 Ky. 281, and Karr v. Pearl, 212 Ky. 387. See also Caldwell's Kentucky Law Dictionary, vol. 6, pages 235-9.

In the cases of Litteral v. Bevins, 185 Ky. 514; Lamastus v. Morgan's Committee, 178 Ky. 805; Atha v. Webster, 181 Ky. 581, and Johnson v. Elkhorn Gas, Coal and Mining Co., 193 Ky. 585, the rule was announced that a mere *preponderance* of evidence is not enough to authorize the reformation of an executed written contract, and that before a court will do so the proof should be ''clear and convincing, or such as to establish the fraud

or mistake beyond reasonable controversy." In this case defendant denied any such mistake, as well as denied the agreement sought to be interpolated into the contract by the reformation sought by the petition, although plaintiff testified to such facts. The other witnesses introduced by each side at least balanced each other, if, indeed, it did not preponderate in favor of defendant. So that, if for no other reason, the proof was insufficient, under the prevailing rule, *supra,* to authorize the judgment.

Independently, however, of that objection, it uncontradictedly appeared in the case that plaintiff knew that the Hupmobile agency which he purchased was subject to cancellation by the state distributor at any time. He also testified that it was the chief consideration for him entering into the contract. Furthermore, the alleged omitted part of the contract (and which the reformation sought to insert therein and without which plaintiff would have no cause of action whatever) was that defendant "would not engage in this business in this city and would not in any way interfere with, or himself take the agency of said Hupmobile automobile so long as this plaintiff desired to remain in said business," *i. e.,* as local agent for the sale of Hupmobiles. His desire to remain in that business was dependent entirely upon the will of the state distributor under whom he was employed, and when they or it withdrew consent by cancelling his agency, such cancellation necessarily terminated his right to continue "in said business." It did so happen in this case, and when defendant accepted the agency on July 1, 1922, plaintiff was no longer engaged in that business and had not been since about April 1, prior thereto. So that, there was no violation of defendant's contract, even if it had been made as plaintiff contends and had been properly proven to have been omitted from the writing by mutual mistake.

It is said, however, that defendant procured such cancellation; but the evidence fails to establish that fact, since both he and Boyd not only testified to the contrary, but they each also stated that defendant reluctantly accepted the agency when tendered to him, and that he was beseeched to do so because he had made a success of it when he formerly operated it, and the state distributor procured him to do so for purely business reasons. The distributor had the right to do so and plaintiff can not

maintain this action against defendant because that right was exercised.

For the reasons stated, the judgment is reversed, with directions to set it aside and to dismiss the petition.