JAMES L. RESPESS ET AL. v. REX SPINNING COMPANY.

(Filed 27 May, 1926.)

1. **Corporations—Contracts — Stockholders — Directors — Principal and Agent—Ratification.**

Where several of the stockholders of a corporation agree with public accountants to make an audit of the corporation's books, submit the proposition to a meeting of the stockholders who approve, the audit is made and the corporation receives the audit, the objection is untenable that the directors had not passed thereon, and the corporation is bound to the payment of the price of the audit.

2. **Same—Meetings—Majority Vote.**

Only a majority of the stockholders at a meeting lawfully held is necessary to ratify an act of several stockholders in employing public accountants to audit the books of the corporation.

3. **Principal and Agent—Ratification Equivalent to Prior Authority.**

The act of ratification by the principal of one who has assumed to act as his agent, relates back, and is equivalent to a prior authority given him to do the act.

4. **Public Accountants—Statutes—Criminal Law—Actions—Defenses.**

Our statute requiring public accountants under a penalty to qualify and take out a license in this State, is for the conduct of this business therein, and does not embrace within its terms an isolated instance of the employment of a firm of certified public accountants licensed in another state, who send their representative here to acquire information from the books of a corporation for a statement of its condition to be made out in the state in which the auditing concern is authorized to do business.

5. **Same—Public Policy—Vocations.**

While an accountant "actively engaged and practicing accounting as a principal vocation," is required to obtain a license therefor in this State, a mere isolated instance is not sufficient to come within the terms of the statute.

6. **Statutes—Public Policy—Common-Law Right—Interpretation.**

While a contract that contravenes a public policy declared or necessarily implied by statute, observing no distinction as between this and the imposition of a penalty on its violation, the statute will be strictly construed in favor of the alleged offender as being in derogation of a common-law right.

7. **Corporations—Stockholders—Resolutions—Parol Evidence.**

The minutes of the meeting of the stockholders of a corporation are the best evidence of a resolution upon the complete subject-matter, and in the absence of fraud or mistake, may not be varied or contradicted by parol evidence, or explained contrary to the plain meaning of the words used therein.

**8. Contracts—Consideration—Corporations—Auditors.**

A contract to audit the books of a corporation is not necessarily unenforceable because the corporation may not have been benefited thereby, if the auditors have made an examination of its books and reported to the corporation the results thereof.

APPEAL by defendant from *Webb, J.,* at November Term, 1925, of MECKLENBURG.

The plaintiffs, copartners doing business as public accountants under the name of Respess & Respess, brought suit against the defendant, a corporation, to recover for services rendered in auditing and reporting the condition of the defendant's business. On the trial the plaintiffs offered in evidence the following resolution appearing in the minutes of a regular annual meeting of the stockholders of the defendant held on 6 February, 1923: "Mr. W. D. Adams offered the following resolution in writing, to wit: Resolved that Allen J. Graham, W. C. Wilkinson and W. D. Adams be authorized to employ auditors to examine the books of the company covering the period since acquisition by them of stock in the corporation. (Signed) W. D. Adams, J. H. Mayes."

After the introduction of other record evidence and the examination of several witnesses this verdict was returned:

1. Is the defendant indebted to the plaintiffs? Answer: Yes.

2. If so, in what amount? Answer: $4,266.66.

Judgment for the plaintiffs. Appeal by defendants on assignments of error appearing in the opinion.

*Cansler & Cansler and John M. Robinson for plaintiffs.*
*Hugh M. McAuley and Stewart, McRae & Bobbitt for defendant.*

ADAMS, J. Two propositions constitute the basis of the defendant's motion for nonsuit: (1) The resolution purporting to authorize the employment of auditors was not adopted or approved by the directors, but by the stockholders in a meeting at which all the stockholders were not present or represented. (2) When they made the audit the plaintiffs had not complied with the law prescribed for public accountants. In our opinion neither of them assigns sufficient cause for dismissing the action.

With respect to the first we do not think it necessary to enter into a discussion of the duties devolving respectively upon the stockholders and the directors of a corporation. Pursuant to the resolution adopted by the stockholders in their regular annual meeting the plaintiffs were employed to audit the defendant's books; they made a detailed audit covering the time elapsing between 1 January, 1920, and 31 December, 1922; they presented and explained their audit to the stock-

holders in a meeting held 29 June, 1923, upon notice duly given; and their report was "accepted as information" by the stockholders. With the resolution upon the minutes, this appropriation of the plaintiffs' audit was a recognition of the alleged agreement with the plaintiffs; it was a ratification by the stockholders even if the directors had not authorized the committee to act in the premises. As the contract was not *ultra vires* it was not beyond the power of corporate ratification. By subsequent recognition it became as effectual and binding as if the committee had had undisputed power to bind the defendant. This on the principle that the defendant could not accept the benefit of the report and repudiate the agreement under which the report was made, or profit by the agreement and repudiate the authority of the agent by whom it was made. The ratification of an act by one who assumes to be an agent relates back, and is equivalent to a prior authority. 7 R. C. L., 662 (663), and cases cited; *Greenleaf v. R. R.*, 91 N. C., 33; *Taylor v. Navigation Co.*, 105 N. C., 484; *Starnes v. R. R.*, 170 N. C., 222; *Morris v. Basnight*, 179 N. C., 298. The absence of some of the stockholders did not impair the force of the resolution. We have held that if an act is to be done by an incorporated body, the law, resolution, or ordinance authorizing it to be done is valid if passed by a majority of those present at a legal meeting. *Hospital v. Nicholson*, 189 N. C., N. C., 44; *Cotton Mills v. Comrs.*, 108 N. C., 678.

Now, as to the defendant's second proposition. The plaintiffs are public accountants under the laws of the State of Georgia; but neither the plaintiffs nor H. T. Amason, who was assigned as their employee to do the work in the defendant's mill, had a public accountant's certificate as required by the laws of North Carolina. C. S., 7008 *et seq.* Section 7023, provides that if any person shall practice in this State as a certified public accountant without having received such certificate he shall be guilty of a misdemeanor; and section 7020, defines a public accountant as one "actively engaged and practicing accounting as his principal vocation during the business period of the day." The Revenue Act, Schedule B, imposed on public accountants the sum of five dollars as a license tax for the privilege of carrying on their business and made it unlawful for any person to carry on any business for which a license was required without having the license or a duplicate thereof in his actual possession at the time. Laws 1921, ch. 34, secs. 31, 88; Laws 1923, ch. 4, secs. 29, 95. The defendant contends that in breach of these statutes the plaintiffs in making the audit practiced the profession or carried on the business of public accountants in this State and hence cannot force the defendant to comply with its executory agreement to pay for their services. It is no doubt true that as a rule a contract will not be enforced if it rests upon a consideration which contravenes good

morals, public policy, or the common or statute law. In *Sharp v. Farmer,*
20 N. C., 255, it is said: "After a vast number of cases upon the sub-
ject, it .seems to be now perfectly settled, that no action will be sus-
tained in affirmance and enforcement of an executory contract to do an
immoral act, or one against the policy of the law, the due course of
justice, or the prohibition of a penal statute"; and in *Covington v.
Threadgill,* 88 N. C., 186, it was held that the courts of this State have
never recognized any distinction in this regard between the effect of
statutes declaring certain acts to be unlawful and the effect of those im-
posing a penalty. Also in *Courtney v. Parker,* 173 N. C., 479: "It is
well established that no recovery can be had on a contract forbidden by
the positive law of the State, and the principle prevails as a general
rule whether it is forbidden in express terms or by implication arising
from the fact that the transaction in question has been made an in-
dictable offense or subjected to the imposition of a penalty." See, in addi-
tion to the cases there cited: *Blythe v. Lovingood,* 24 N. C., 20;
*Ramsay v. Woodard,* 48 N. C., 508; *Ingram v. Ingram,* 49 N. C., 188;
*Griffin v. Hasty,* 94 N. C., 438; *Puckett v. Alexander,* 102 N. C., 95;
*Randolph v. Heath,* 171 N. C., 383; *Phosphate Co. v. Johnson,* 188
N. C., 419.

In the case before us the determinative question is whether the plain-
tiffs in auditing the defendant's books "practiced as," or "carried on
the business of," public accountants in North Carolina; and the answer
must be sought in our interpretation of the statutes heretofore cited.
In trying to ascertain whether a specific act is a breach of a statute we
must consider, not only the language, but the scope and purpose of
the statute and the object to be secured.

To practice a profession or to carry on a business usually signifies
the regular pursuit of such profession or business as an occupation,—
to make a practice of it, or actively to engage in it customarily or
habitually. This definition is not without exceptions. As the Legisla-
ture may prohibit a general practice until prescribed conditions are
complied with, it may attach the same conditions to a single transaction
of a kind not likely to occur otherwise than as an instance of general
practice. *Collins v. Texas,* 223 U. S., 288, 56 Law Ed., 439. But this
the Legislature has not done in the cited statutes, and the construction
of the act of 1925 is not involved. Laws 1925, 261.

As we have said, the plaintiffs, who have their office in Atlanta, are
certified public accountants under the laws of Georgia. Allen J. Graham,
one of the three men named in the resolution of the stockholders, went
to Atlanta, and there the alleged agreement was made. The plaintiffs
then appointed H. T. Amason and three others to do certain work
at the defendant's mill. At that time neither of them was a certified

accountant. They spent several weeks at the mill, prepared their audit "in the rough with pencil," and returned to Atlanta and made up their report. Amason was senior accountant; and this was all the work he did in North Carolina.

In these circumstances we are of opinion that the plaintiffs did not practice or carry on the business of certified public accountants in this State within the meaning of the statutes. To carry on the business of a public accountant or to practice as a certified public accountant is much more than is implied in the series of detached acts done by the plaintiffs' representatives in acquiring information upon which to base their report. We are the more inclined to this view because the statutes are penal and should be construed strictly against the offender and liberally in his favor. Also because the act of 1925 was evidently intended to cure the defects or omissions of former statutes. We think the motion for nonsuit was properly overruled.

The first and fifth assignments of error relate to the exclusion of evidence offered by the defendant as to the circumstances under which the resolution of 6 February, 1923, was passed,—particularly that the word "instructed" in the original draft was changed to "authorized" before the resolution was adopted, and that an opinion was expressed by some of those present as to what the resolution would mean should the former be substituted by the latter. The controversy turned on the question whether Graham, Wilkinson, and Adams had been authorized to have an audit made for the defendant or for their own exclusive benefit.

As a general rule the minutes of a corporation are the best evidence of its acts, resolutions, and proceedings; and when they are complete, when no fraud or mistake is shown, and it does not appear that there is any error or omission, parol evidence is not admissible to contradict, modify or vary the record. If the language is ambiguous or its meaning is indefinite, or if the minutes are incomplete and fragmentary parol evidence may be heard to show what was done. *Motor Co. v. Scotton,* 190 N. C., 194; 4 Fletcher's Cyclopedia, Corporations, sec. 2782 *et seq.*

The resolution is expressed in language that is clear and unambiguous. Manifestly the three designated stockholders were "authorized" to employ auditors on behalf of the corporation; they were entitled for their own benefit, without a resolution, to reliable information as to the affairs and condition of the defendant and a pretended grant of authority to inspect its books and records would have imparted no additional vigor to their legal right. *Otis-Hidden Co. v. Scheirich,* 22 A. L. R., 19 and annotation. Apart from this the proffered evidence was vague, indefinite, and unsatisfactory. In its exclusion we see no error. It follows that his Honor's instruction as to the first issue was correct and that the seventh assignment must be overruled.

The defendant contended, as the basis of its fourth assignment, that the plaintiffs' audit had been repudiated by the stockholders and offered certain minutes in proof of this contention. The defendant says that as the suit was brought to recover for services rendered if no benefit was received no recovery can be had. The consideration did not necessarily consist of any profit or advantage accruing to the defendant; any benefit to the promisor or any loss or detriment to the promisee is a sufficient consideration. *Fawcett v. Fawcett, ante,* 679. If the information disclosed was not pleasing to the defendant the plaintiffs' detriment was not for this reason any the less. The fourth assignment is therefore overruled.

To the other exceptions we have given our careful attention and have found them to be without merit.

There is no reversible error in the record.

No error.