# Francis et al. v. Domino.

(Decided Oct. 6, 1933.)

(As Modified on Denial of Rehearing Dec. 8, 1933.)

WOOTTON & WOOTON and F. M. BURKE for appellants.

W. W. REEVES, D. G. BOLEYN and H. H. SMITH for appellee..

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In the spring of 1928, the appellant, Carr Creek Community Center, a private corporation engaged in educational work in Eastern Kentucky, and hereinafter called the Community Center, decided to build a schoolhouse and a teachers' cottage on the Flax Patch Branch in Knott county. It entered into a contract with Marion Francis, one of its directors and its coappellant herein, to construct these buildings for the contract price of $7,500. The buildings were to be constructed in the main with stone quarried from a nearby quarry. Francis later entered into a subcontract with the appellee, Joe Domino, to do the stone work, the exact extent of which being in dispute in this case. This subcontract

provided that Domino was to prepare the stone at the quarry, transport it to the site of the buildings, and there set it. However, it developed that Francis could transport the stone and furnish the cement and sand necessary to set it cheaper than Domino could, so this subcontract was abandoned and a new subcontract was entered into. Domino had started his work before this last subcontract was reduced to writing. It was prepared by Will Francis, a brother of Marion Francis, and also a director of the Community Center. After it had been prepared, Marion Francis left it with Domino to look over, as the latter admits. Domino did read it over, although, as he says, hurriedly. After Domino had had the contract for some time, Marion Francis came one day to the place where Domino was working and had Domino sign the contract. The portions of this contract material to this controversy are articles 1, 4, and part of article 6. They read:

Article 1. "The contractor (Domino) agrees to build the main walls and the basement walls of a school house and cottage on the Flax Patch Branch of split stone according to the plans and specifications hereto attached. He further agrees to imbed in the top layer of stone and cement on top of the walls a sufficient number of bolts to bolt the foundations of the roofs down good and to level and smooth the top of the walls with cement and to leave the walls ready for the woodwork in first class workmanlike order."

Article 4. "Both parties agree that the plans and specifications furnished by the Carr Creek Community Center and its executives shall be and are a part of this contract as if they were herein specified."

Article 6. "The owner agrees to pay the contractor Ten Dollars ($10.00) for each *net* cubic yard of stone laid in the walls of the said two buildings." (Italics ours.)

Domino not only built the main walls and basement walls of the schoolhouse and cottage, but he also did a lot of other work on these buildings with the full knowledge, consent, acquiescence, and indeed the insistence of the appellant Francis and the executive officers of the Community Center who were to a large degree

supervising the job. On the schoolhouse he laid the stone window sills, built a flue for the furnace, constructed a front porch, set the steel window frames, constructed 81 lineal feet of dressed stone steps, and set 8 19/29 cubic yards of stone masonry for those steps. On the teachers' cottage, he built two fire places and chimneys, installed a flue ring, built some stone piers, installed four steel window frames, and prepared and laid 52 lineal feet of window sills. There is no substantial dispute in the record as to all of this work, in addition to the main walls of the buildings and basements being done by Domino, and although there is some intimation that the work was not done in a workmanlike manner, no insistence is put upon that in the briefs on this appeal. Indeed, there scarcely could be in view of the evidence as to the excellent character and quality of the work which Domino did. After Domino's work was completed, the dispute which is the cause of the present litigation arose. It is the method by which Domino's compensation under the contract is to be computed and whether all the work Domino did was covered by the contract or just the main and basement walls of the buildings, the rest being extra work. Domino first claimed that the contract itself provides that in accordance with the usual and general custom in the stone trade prevailing in this locality, he is to be paid for the stone work done by him in the main walls and basements of these buildings on gross measurements, that is to say, there are to be no deductions from the measurements of these walls for openings in them caused by doors, windows or otherwise less than 6 foot square and all corners of the buildings are to be measured double. Francis, and later the Community Center, contended that the contract specifically provides that Domino is to be paid for the *net* cubic yards of stone laid; that whatever may be the custom in the trade as to compensation being grounded on gross measurements, such custom, if any, must yield to the express terms of the contract, and that the term "net" in article 6 clearly means that the openings in walls are to be deducted and corners are to be measured but once. Indeed, the appellants at first insisted that even the mortar between the stone should be deducted.

As to the work done in addition to the erection of the main and basement walls in these buildings, Domino

contended that his contract does not call for such work, and that he is entitled to be paid for it on a quantum meruit basis. The appellants insisted that all this work is covered by the contract and should be paid for at the contract rate of $10 per net cubic yard of stone laid, but that if in error as to the work being included in the contract, still it should be paid for at the same unit price as the contract provides for the regular work. The parties not being able to agree, Domino brought the instant suit to recover from the appellants for the work he had done in accordance with his theory of the way the dispute should be decided, asking further that a mechanic's lien he had filed against the property on which these buildings had been erected should be enforced. The appellants defended according to their theory of the way the dispute should be resolved. After the parties had taken proof in support of their respective contentions, Domino filed an amended petition in which he alleged that if his interpretation of the contract as to how the measurements were to be made, gross or net, be wrong, then the contract did not express the true agreement of the parties and should be reformed on the ground of mutual mistake or mistake on his part and fraud on that of Marion Francis in the drafting. The allegations of the amended petition being put in issue by the appellants, the parties then took proof on the issues raised by it. The case was then submitted for judgment. The trial court reformed the contract to conform to Domino's contention as to its real terms, and then awarded him on the contract as thus reformed a judgment against all the appellants in the sum of $2,545.53 for building the main walls and basement walls of the school building, and all the so-called extra work done thereon, and in the further sum of $1,612 for building the main walls and basement of the teachers' cottage and all the extra work done on that building, making a total of $4,157.53, subject to a credit as to which both parties agreed of $2,600 theretofore paid Domino, leaving a net balance due him of $1,557.53. The judgment also ordered the enforcement of the mechanic's lien asserted. From that judgment this appeal is prosecuted. As no point is made in appellants' brief of the personal judgment running against the Community Center, we shall not further advert to it but at once direct our discussion to the vital issues in this case.

It is clear to us that the contract as drawn does not provide for gross measurements as Domino insists. The interpretation that Domino would put upon the contract would utterly ignore the presence therein of the words "for each net cubic yard of stone laid." These words can only mean that he is to be paid for the stone actually laid, and this construction excludes the gross measurements for which Domino contends. Undoubtedly the trial court was of this opinion, for he reformed the contract before he entered judgment for Domino, and there would have been no need for this unless the trial court thought that Domino should be paid on the gross measurement basis, and that this could not be done without a reformation of the contract. Did the trial court err in reforming the contract? To authorize a reformation of a contract by a court of equity, the proof of the fraud or mistake upon which the claim for reformation is grounded must be full, clear, and convincing. Stanley v. Slone, 216 Ky. 114, 287 S. W. 360; Morris v. Gilliam, 213 Ky. 763, 281 S. W. 1026; Perry v. Thomas, 232 Ky. 781, 24 S. W. (2d) 603. The proof in the instant case does not measure up to this standard. On the one side, we have Domino's testimony as to what the real understanding was. Opposed to this, we have Francis' testimony that the contract as drawn expressed the true agreement. Domino admits having read the contract. While it is true he is an Italian, his testimony in this case evidences a familiarity with the English language that should have stood him in good stead in reading this contract. If he had never heard of the use of the word "net" in connection with stone work before, as he says is the case, that very fact ought to have put him on inquiry. Although during the course of the work, in order that Domino could draw down some of the money due him as the work progressed, gross measurements were taken in order to estimate how much money could safely be paid Domino, Francis testifies that this was done by way of rough approximation only, and he told Domino that when the final settlement was made the pay would have to be based on net measurements. This Domino denies. The sanctity of contracts as written should not be lightly set aside. Domino not only had opportunity to read this contract, but admits that he did so. Francis swears that it embodies the agreement as made. Domino denies it. Under

such circumstances, we cannot say that the proof is so clear, full, and convincing, as is necessary to authorize a reformation. The trial court erred in reforming the contract and in awarding Domino judgment based on gross measurements.

So far as the so-called extra work is concerned, Domino is clearly correct in his contention that it is not covered by his contract. This contract only obligates him to build the main walls and basement walls of the school and cottage buildings. It is true, as pointed out by the appellants, that article 4 makes the plans and specifications a part of the contract. But this provision cannot be tortured into an agreement on Domino's part to do all the work called for by those plans and specifications as appellants insist. It simply means that, in so far as he has agreed to do any work, it shall be governed by the plans and specifications. So in constructing the main walls and basement walls of these buildings, that being the work he obligated himself to do, Domino was to be governed by the plans and specifications. But his agreement to be bound by those plans and specifications did not obligate him to do all the work to which they referred, for they covered not only the stone work in the main walls and basement walls, but also the woodwork and other work in the buildings. Appellants do not contend that Domino was to do the woodwork in the buildings, but that is covered by the plans and specifications just the same as the so-called extra work here involved is included. The work to be done under the contract is set out in article 1. The method and manner in which that work is to be done is what is covered by article 4.

The work done by Domino on these buildings outside of the main walls and basement walls of the buildings being in truth extra work, as Domino contends, how shall the same be paid for? Of course, on a quantum meruit basis. Conceding arguendo the correctness of appellants' position that where extra work under a contract is done it is to be paid for at the same rate as is the regular work, that rule can only apply where the extra work is of the same character as that of the regular work. That is not so here. The extra work was entirely different from the regular work called for by the contract. Domino produced proof as to the fair and reasonable price for the extra work he had done.

Appellants, resting on their idea that the extra work was included in the contract or at least should be paid for at that rate, introduced no proof to contradict that of Domino on this issue, save as to one chimney. In this state of the record, we take the proof of Domino as the measure of the recovery to which he is entitled for this extra work.

Before applying what we have said to the mathematics of this case, we may say that Domino made a claim for work done by him and caused, as he claims, by a mistake in the plans. The lower court did not allow him anything on this claim, and Dom'no makes no complaint of that ruling on this appeal.

There were two sets of measurements in this case; those offered by Domino and those offered by appellants. They differ somewhat. The trial court evidently adopted those appearing in Exhibits 7 and 8 filed with the deposition of Marion Francis, for on no other basis that we have been able to discover can one even approximate the finding of the court. Taking the gross measurements of the main walls and basement walls as they appear in these exhibits, and overlooking the fact that in the case of the teachers' cottage these gross figures also include the figures of two chimneys and the piers under the cottage (also included in the extra work on this building for which the court awarded Domino judgment), and applying to these figures the contract price of $10 per cubic yard and adding to the figure thus obtained the value of the extra work as established by Domino's proof, we come to within $34 of the judgment the court gave Domino. We are of the opinion that the court did not err in relying on the measurements as established by appellants rather than as established by Domino. The latter admitted that his measurements might not be quite accurate. The appellants' measurements were made by those skilled in such matters, and hence are more to be relied upon than those of Domino. Besides, a test of Domino's multiplication shows errors, as for instance where he states 43 ft.x 18"x7.10 ft. equals 505½ cubic feet, and 10 ft.x18"x7.10 ft. equals 117 cubic feet. A test of appellants' multiplication yields no such errors. The gross measurements of the main walls and basement walls of the schoolhouse as they appear in the aforesaid Exhibit 7 total 4,742 cubic feet. Those of the main walls and

basement walls of the cottage as they appear in the aforesaid Exhibit 8 total 3,469 cubic feet, from which, however, must be deducted 381 cubic feet for two chimneys and 77 cubic feet for stone piers under the cottage erroneously included in the measurements of the main walls and basement walls. These chimneys and piers are included in the extra work Domino did on this building. With these deductions, we have a gross total of 3,011 cubic feet in the main walls and basement walls of this cottage. This figure added to the 4,742 cubic feet of the school building gives a total of 7,753 cubic feet. From this last figure there must be deducted for the openings in the main walls and basement walls of the school building 601 cubic feet (see Exhibit 7), and for the opening in the main walls and basement walls of the cottage 507 cubic feet (see Exhibit 8), or a total of 1,108 cubic feet. With such deduction we have a net of 6,645 cubic feet of stone actually laid in the main walls and basements of the buildings. This figure reduced to cubic yards makes 246 1/9 cubic yards. At $10 a cubic yard, this work comes to $2,461.11. To this must be added for the extra work on the school building $780.03, and for that on the cottage $438. From the grand total of $3,679.14 thus reached, there must be deducted the agreed credit of $2,600, leaving a balance due Domino of $1,079.14, for which he should have judgment, together with the enforcement of his mechanic's lien. The judgment of the lower court being in excess of this amount, it is reversed, with instructions to enter a judgment in accordance with this opinion.