# Bennett et al. v. Madison Sales Co. et al.

(Decided June 9, 1936.)

STOLL, MUIR, TOWNSEND & PARK, GAYLE A. MOHNEY, and W. W. MEEKS for appellants.

BENTON & DAVIS for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This suit involves a controversy between Warfield C. Bennett and J. Morgan Evans, directors of the Madison Sales Company, a corporation, and owners of 50 per cent. of its capital stock, on one side, and C.

R. Watson, P. J. Wyrick, and S. H. Jones, on the other. Watson, Wyrick, and Jones are also directors of the corporation, and own 50 per cent. of its capital stock. Prior to February, 1929, they and certain other persons operated a livestock commission business in Richmond, Ky., under the name of the Richmond Sales Company. The business conducted by the company was the sale of livestock on commission. In February, 1929, the business of the Richmond Sales Company and its real estate where the stockyards were located were sold to appellants, Bennett and Evans, who continued the business under the old firm name. Thereafter, appellees and their associates purchased a tract of land near to or adjoining the land they had sold to appellants, erected buildings thereon, and in May, 1929, began operating a livestock sales agency. In May, 1930, they formed a corporation under the name of Madison Sales Company with capital stock of $30,000, divided into 300 shares of the par value of $100 each. Watson, Wyrick, and Jones owned 50 shares each, and their associates owned the remaining 150 shares, all of which were purchased by Watson and Wyrick during the following year.

Due to the business depression and the sharp competition between them, the two companies operated at a loss during 1930 and 1931. In the autumn of 1931, negotiations for the merger of the two corporations were begun. These negotiations culminated in a written contract dated October 7, 1931, and signed by the Madison Sales Company, by C. R. Watson, its president, and C. R. Watson, P. J. Wyrick, and S. H. Jones, the stockholders and directors of the corporation, and by Warfield C. Bennett and J. M. Evans, partners doing business as Richmond Sales Company. By the terms of the contract, Bennett and Evans leased to the corporation, for a term of five years, all of the real estate then being used by them in connection with their livesock sales business, except a residence then occupied by Lawrence Scott. It was agreed that the Madison Sales Company should amend is charter and issue to Bennett and Evans, in equal portions, 300 shares of its common stock which was to lapse at the conclusion of the contract on October 14, 1936. The contract provided that "this new stock will have all

the privileges, authority, voting power, and value of the now existing stock with the sole exception that the holders of said new stock shall have no interest, right or title in the real estate or the proceeds arising from the sale of the real estate now owned by the Madison Sales Company." The Madison Sales Company agreed to pay all taxes and assessments due and payable during the term of the lease on the property leased from Bennett and Evans, and to keep the buildings thereon in a good state of repair. The contract contained this provision, the construction of which is in dispute:

> "In consideration of the mutual covenants contained herein and the Madison Sales Company covenanting, promising and agreeing to pay second parties the sum of $5,000.00, due and payable upon the dates hereinafter named, $1,000.00 of which is due and payable January 1st, 1933, and a like sum on the first day each succeeding January thereafter for three years and the last payment of $1,000,00 to be due and payable October 14th, 1936, and said annual payments aggregating said $5,000.00 are to be paid from the gross earnings of the Madison Sales Company and is a preferred claim against the earnings of said Madison Sales Company and is to be paid before any dividends are declared or paid by said Corporation and said payments are to be cumulative. * * *"

The articles of incorporation of the Madison Sales Company were amended in accordance with the provisions of the contract, and, at a meeting of the stockholders on December 2, 1931, 150 shares of stock were issued to each of the appellants, which made them the owners of one-half of the stock, and left Watson, Wyrick, and Jones the owners of the other one-half. All of the stockholders were elected directors of the corporation, and Evans was elected vice president. By oral agreement between the parties, Watson and Evans were made co-managers of the business, and the salary of each was fixed at $75 per month. Wyrick was employed at a salary of $100 a month, and Evans' daughter was employed as bookkeeper at a salary of $15 per week. In September, 1932, the corporation paid to Bennett and Evans, jointly, $3,500, and to Watson, Wyrick, and Jones, $2,500. The extra $1,000 paid

to Bennett and Evans was for the first year's rental. Watson claimed that the bookkeeper had informed him, before the distribution was made, that the company had $7,000 in the bank which could be distributed. It developed later that the company had sustained a loss instead of making a profit during 1932, and the distribution of $6,000 caused it considerable embarrassment. It became necessary to borrow money to meet its obligations, and friction soon developed between Bennett and Evans, on one side, and Watson, Wyrick, and Jones, on the other.

At a meeting of the board of directors on December 31, 1932, C. R. Watson was elected sales manager of the corporation, and the minutes of the meeting recited that his salary was fixed "at $50 per month until changed by the board of directors." P. J. Wyrick was employed as "feed man," and his salary fixed at "$50 per month until and unless said salary is changed by said board of directors." Watson, as manager, was empowered to employ Ed P. Warford as bookkeeper of the corporation for the year 1933, at a salary not to exceed $100 per month, and he was further empowered to employ all other employees of the corporation and to fix their salaries. Beatrice Farley was employed as assistant bookkeeper at a salary of $10 per week "until the stock sales business increases, and when it increases the corporation manager, Watson, is empowered to increase the salary of said assistant bookkeeper." A resolution was adopted authorizing the president of the corporation to negotiate two loans for $1,500 each to pay its overdrafts at the banks and to provide working capital.

In April, 1933, the president of the corporation called a meeting of the board of directors, to be held in the McKee Building in Richmond, at 7 o'clock p. m. on April 25. Each director received a written notice that the meeting would be held, but the notice failed to state what business was to be considered. Bennett and Evans were not present at the meeting. The other three directors adopted a resolution removing Evans from the office of vice president, and electing Wyrick thereto. A resolution was adopted fixing the salary of C. R. Watson, as president and general manager, at $100 per month, effective April 1, 1933, and the sal-

ary of P. J. Wyrick at $100 per month, effective April 1, 1933. Another meeting of the board of directors was held on May 30, 1933, but it does not appear that notice of the proposed meeting was sent to the directors. Only C. R. Watson and P. J. Wyrick were present in person. Jones had given to Wyrick a proxy in which he attempted to authorize him to cast his vote on any question that came up at the meeting. The minutes of this meeting show that resolutions were adopted fixing the salary of C. R. Watson at $200 per month, effective May 1, 1933, and the salary of P. J. Wyrick at $200, effective at the same time. Watson and Wyrick drew the increased salaries until June 1, 1934, when the judgment herein was entered.

Bennett and Evans did not learn until shortly before this suit was filed on January 26, 1934, that Watson and Wyrick were receiving salaries in excess of $50 per month each. On January 23, 1934, the corporation's check for $138.66 was sent to Bennett, and a check for a like amount was sent to Evans. These checks were intended to represent the balance due on the second $1,000 payment provided for in the contract, after deducting certain indebtedness owing to the corporation by Bennett and Evans. They refused to accept the checks, and demanded that Watson and Wyrick return to the corporation all sums that had been paid to them as salaries in excess of $50 per month. Bennett discussed the matter of increased salaries with Watson, but being unable to arrive at any satisfactory compromise, he and Evans instituted this action against Watson, Wyrick, and Jones, and the Madison Sales Company.

They alleged that it was the true intention of the parties, when the contract of October 7, 1931, was drafted, to provide that the sum of $5,000 should be paid out of that portion of the gross earnings of the corporation which would otherwise go and be paid to Watson, Wyrick, and Jones, and they asked that the contract be reformed in that respect. They also asked for a judgment against the Madison Sales Company for $1,000, the second installment due them under the contract, and that the same be charged against the account of Watson, Wyrick, and Jones, and that Watson and Wyrick be required to refund to the corporation

the following sums: $1,250 each, for salaries, illegally paid to them out of the corporation funds during the year 1933; $331.08, for advancements made to each of them; $476.64, paid by the corporation in 1932, and $453.33, paid in the year 1933, for insurance premiums for them. They also prayed judgment against Watson for $281, for stock purchased by him from the corporation, and they asked that the minutes of the directors' meetings of April 25, 1933, and May 30, 1933, be expunged. Before the case was submitted, the last four mentioned sums were paid to the corporation by the appellees, which left in issue the following questions: (1) The legality of the directors' meetings of April 25 and May 30; (2) the right of the corporation to recover from Watson and Wyrick any amounts paid to them as salary in excess of the $50 per month, which was fixed by resolution of the board at the meeting of December 2, 1931; (3) the reformation of the contract of October 7, 1931.

The court adjudged: (1) That the minutes of the directors' meetings of the Madison Sales Company held April 25 and May 30, 1933, in so far as they related to the fixing of the salaries of Watson and Wyrick, be expunged from the records of the corporation and canceled and held for naught; (2) that Watson and Wyrick were entitled to receive a reasonable salary from and after May 1, 1933, which was fixed at the sum of $150 per month for Watson and $100 per month for Wyrick, and that the corporation should recover from each of them the amount which they had received in excess of the amount fixed as a reasonable salary by the court; (3) that the plaintiffs were not entitled to a reformation of the contract of Ocober 7, 1931, and that the $5,000 agreed to be paid them under the contract should be paid by the corporation out of its gross earnings, and should not be charged to the account of Watson, Wyrick, and Jones.

The plaintiffs alone have appealed. It is tacitly conceded by appellees that the resolutions adopted at the directors' meetings of April 25 and May 30, 1933, raising the salaries of Watson and Wyrick, were invalid and of no effect, and it follows that the only questions to be considered on this appeal are: (1) Did the court err in refusing to reform the contract of October

7, 1931, in accordance with the prayer of the petition; and (2) did it err in adjudging that Watson and Wyrick were entitled to salaries from and after May 1, 1933, in excess of the amount fixed by a resolution of the board of directors at the meeting of December 31, 1932?

The clause of the contract with reference to the payment of the rental is clear, specific, and free from ambiguity. The Madison Sales Company agreed to pay to the appellants the sum of $5,000 in installments of $1,000 each, one installment falling due on January 1 of each year, for four years beginning January 1, 1933, and the final installment falling due October 14, 1936. The rental aggregating the sum of $5,000 is a preferred claim against the gross earnings of the corporation, and the payments are cumulative; that is, if the earnings are not sufficient in any year to pay the installment, it remains a preferred claim and is payable out of future earnings during the term of the lease. There is nothing in the contract indicating that these payments were to be charged against the appellees' share of the earnings. They are obligations of the corporation alone. The testimony as to whether the contract thus interpreted expressed the true intention of the parties is in conflict. Bennett and Evans testified that it was the intention of the parties that the rental should be paid out of appellees' share of the earnings, and the appellees testifed positively to the contrary, and their testimony is supported by the testimony of the attorney who dictated the contract in the presence of the parties. In view of the well-settled rule that evidence of fraud or mistake must be clear and convincing before a written contract will be reformed, we are not disposed to disturb the chancellor's finding in this respect.

There is a presumption arising from the instrument itself that it sets forth fully and correctly the true agreement of the parties, and the burden is on the party alleging the fraud or mistake to prove it. A written instrument will not be reformed on contradictory evidence which leaves the mind in doubt as to the truth, but the mistake or fraud relied upon must be clearly established by satisfactory proof. Francis v. Domino, 251 Ky. 255, 64 S. W. (2d) 571; Brown v.

Union Central Life Ins. Co., 241 Ky. 514, 44 S. W. (2d) 514; Mayo Arcade Corp. v. Bonded Floors Co., 240 Ky. 212, 41 S. W. (2d) 1104; McKnight v. Johnson, 236 Ky. 763, 34 S. W. (2d) 239; Insurance Co. of North America v. Evans, 229 Ky. 613, 17 S. W. (2d) 711; Gillispie v. Blanton, 214 Ky. 49, 282 S. W. 1061; Morris v. Gilliam, 213 Ky. 763, 281 S. W. 1026.

It is appellants' contention that the resolution adopted at the meeting of the board of directors of December 31, 1932, fixing the salaries of Watson and Wyrick at $50 a month each, are conclusive and binding on them until the salaries are changed by the board. The minutes of private corporations are the best evidence of actions of the board of directors referred to therein, and the general rule is that parol evidence cannot be received to prove what was done if the minutes are accessible, but there is some conflict in the decisions as to whether or not parol evidence is admissible to vary or contradict the properly authenticated minutes of a directors' meeting where there is no element of ratification or estoppel. See annotation to Huebner v. Advance Refrigerator Co., 200 Wis. 233, 227 N. W. 868, in 66 A. L. R. 1328. In Harlan-Kellioka Coal Co. v. Kelly, 203 Ky. 260, 262 S. W. 259, it was held that parol evidence is inadmissible to vary or contradict the terms of a resolution of the board of directors, contained in the minutes fixing the salaries of corporate officers and the fund from which they should be paid, where the integrity of the corporate record is in no way impeached. Kelley-Koett Mfg. Co. v. Goldenberg, 207 Ky. 695; 270 S. W. 15, apparently holds to the contrary. It was said in that case that corporate minutes, when properly authenticated and presented, are admissible as competent evidence for and against the corporation and its stockholders or members, but they are not conclusive but only prima facie evidence of the proceedings, and parol evidence is admissible for the purpose of proving what actually occurred. To the same effect is Hatcher-Powers Shoe Co. v. Bickford, 212 Ky. 163, 278 S. W. 615. It is unnecessary to determine what is the correct rule in this respect, since it is recognized in all jurisdictions that where corporate minutes appear on their face to be incomplete or are ambiguous, parol evidence is admissible to supply the

omission or to aid in ascertaining their true meaning. The rule is thus expressed in Respess v. Rex Spinning Co., 191 N. C. 809, 133 S. E. 391, 394:

"If the language is ambiguous or its meaning is indefinite, or if the minutes are incomplete and fragmentary, parol evidence may be heard to show what was done."

In the case before us, the minutes indicate on their face that the salaries were merely nominal and that an increase by the board was contemplated. The monthly salaries of the two managing executives of the corporation were fixed at $50, while that of the bookkeeper was fixed at $100, and Watson was empowered to employ all other members of the corporation and to fix their salaries. The salary of the assistant bookkeeper was fixed for the year 1933 at $10 per week

"until the stock sales business increases, and when it increases the corporation manager, Watson, is empowered to increase the salary of said assistant bookkeeper."

The evidence for appellees tends to show that it was understood and agreed by all of the directors at the time the resolutions were adopted that the salaries then fixed should continue only two or three months and should then be increased if the increase was justified by the condition of the business. Watson and Wyrick insisted that the business could be made profitable and agreed to work for a brief period for nominal salaries in order to have an opportunity to demonstrate the soundness of their judgment. The profits of the corporation amounted to several thousand dollars during the first few months under their management, and a number of witnesses testified that their services were reasonably worth from $2,500 to $3,000 annually. The minutes in question indicate on their face that an increase in the salaries during the year 1933 was contemplated. The parol testimony merely supplied the conditions under which the increase was to be made and which were patently omitted from the recorded minutes.

In view of the circumstances and the uncertainty

as to the time the salaries should continue apparent on the face of the record itself, parol evidence, to show what actually occurred at the meeting of December 31, 1932, was admissible. Appellants absented themselves from all subsequent meetings of the board, and, as the director whose salary was involved could not vote, only a minority of the board was left to act. Thus, if appellees' only remedy was action by the board of directors, they could be compelled to work for the salaries fixed at the meeting of December 31, 1932, during the entire life of the contract. We conclude that the circuit court correctly adjudged that appellees Watson and Wyrick were entitled to reasonable salaries from and after May 1, 1933. That the salaries fixed by the court are reasonable is amply sustained by the evidence.

Judgment affirmed.