# Prudential Ins. Co. of America v. Asbury.

Sept. 29, 1942.

J. Leonard Davis and H. L. Bryant for appellant.

Daniel Boone Smith and C. L. Tignor for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Reversing.

By the terms of a policy of insurance, appellant, the Prudential Insurance Company of America, agreed to pay appellee, Elbert J. Asbury, the sum of $50 per month should he become and remain permanently and totally disabled. The policy was in full force and effect at all times herein mentioned. Appellee claims that he became so disabled November 1, 1937, and continuously since has remained in that condition. On February 8, 1938, he notified appellant of his disability and requested forms for filing claim for payment and waiver of premiums under the policy. Such forms were forwarded to him, were executed by him and his physician, Dr. B. E. Gianinni, and returned to the company on the 9th day of

May, 1938. The proofs showed appellee to have been ill since November 1, 1937; that his blood pressure at that time was systolic 220, diastolic 120; that the urine contained 4 plus albumen; that the frontal sinuses were infected, aggravated by a severe cold; and that he was suffering further with a gastric ulcer. In answer to questions printed on the form, the doctor stated that appellee was disabled from doing any kind of work and had been so disabled since the first day of November, and that "At this time it is impossible to say whether he will ever be well again." Appellant notified appellee that the statements made in the proofs of claim were not sufficient for it to conclude he was totally disabled and asked for further proof of his disability which he failed to furnish. On November 17, 1938, more than seven months after filing the proofs of claim, appellee commenced this action seeking to recover the disability benefits of the policy and to enforce the clause providing for waiver of premiums.

Although the cause is strictly a common-law action, the petition was filed in equity, evidence taken by depositions, and the case submitted to the trial court for judgment. The court found appellee to be totally and permanently disabled and rendered judgment accordingly. Because it was treated as an equitable action below we will treat it so on appeal. Consequently the finding of facts of the chancellor will not be disturbed unless the evidence is such as to raise more than a doubt as to its correctness. Buckner v. Tucker, 213 Ky. 785, 281 S. W. 987; Staten v. Louisville Trust Co., 289 Ky. 258, 158 S. W. (2d) 387.

Appellee first complains that the trial court erred in overruling its motion to dismiss the action because the proof of claim filed with the Insurance Company did not contain sufficient information for appellant to determine that appellee was entitled to be compensated under the policy. It is argued that the failure of the doctor to specifically certify that he was of the opinion the disability was permanent rendered the proof insufficient. We are not impressed with this contention. The statement of Dr. Gianinni that "At this time it is impossible to say whether he will ever be well again," coupled with the recitation of ailments known to all men to be symptoms of serious and often fatal illnesses, was sufficient for even a layman to conclude that appellee was totally

and permanently disabled, if in fact he was afflicted with such illness. The mere fact that appellant did not believe the statements to be true, or the fact that its private investigation developed facts from which it concluded that the claimant was not disabled, do not have the effect of nullifying the statements shown in the proof of claim. We therefore conclude that the written proof of total and permanent disability was sufficient to meet the requirements of the policy in that respect, that seven months was more than sufficient time for appellant to determine whether it was liable to appellee under the terms of the policy, and that its failure to approve the claim in such period of time was in effect a denial of liability.

We will next consider the contention that the chancellor erred in overruling appellant's exceptions to the depositions. Written exceptions to the depositions taken on May 8, 1940, were duly filed, and contained, as grounds for the exceptions, (1) appellant had no notice that the depositions would be taken on May 8, 1940; (2) at the time the depositions were taken appellant was taking the depositions of Walter A. Fisher and Park Richmond in Chicago, Illinois; (3) practically all of the evidence of Leslie Voltz and, specifically, certain answers was evidence in chief and not in rebuttal.

The statement that appellant had no notice that the depositions would be taken is without foundation. Notice was served on Honorable J. Leonard Davis the day before the depositions were taken. Mr. Davis is appellant's attorney of record and the author of its brief on this appeal. Our attention has not been called to any case in which a litigant has questioned the legality of the notice to take depositions by reason of the fact it was served on the attorney of the defendant corporation. That is the common practice and is expressly authorized by Section 628, Civil Code of Practice, which reads:

"Notice to a corporation may be served on its chief officer or agent, or on its attorney."

The second objection is equally without merit. While it is true that depositions to be read on the trial of this case were being taken in Chicago two days before the depositions complained of were taken, neither of the chief counsel for appellant was present at the taking of depositions in Chicago. The defendant was represented in the taking of those depositions by the Honorable

William A. Cannon, evidently an attorney of Chicago who does not appear as an attorney in any other part of the record. The plaintiff had no attorney representing him at the taking of depositions in Chicago, and certainly there is no showing that appellant was prejudiced in any manner by being required to take depositions in Harlan on May 8, merely because attorneys who had no other connection with the case were taking depositions in respect to record testimony in Chicago. As to the third ground of the exceptions, it is true that the evidence given in the deposition of Leslie Voltz, and which was taken after plaintiff closed his case, was, for the most part, in chief; but it was merely cumulative of the testimony of several other witnesses and added no new matter to be considered in a determination of the issue. The failure of the court to sustain the exceptions to the depositions on this account was therefore not prejudicial. Exceptions should have been sustained to the testimony of appellee concerning an offer of compromise, but we are sure that the court did not consider this irrelevant evidence in determining the real issue involved and we have not considered it in the conclusions we hereinafter express. We will therefore treat his error in this respect not to have been prejudicial to the substantial rights of appellant. We will now proceed to a consideration of the case on its merits.

Total disability does not mean absolute helplessness, and permanent disability does not mean absolute hopelessness. One is totally disabled if he is unable to do substantially all of the material acts in the transaction of his business and employment in his customary or usual manner. Travelers' Insurance Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216; Davis v. New England Mutual Life Insurance Co. of Boston, Mass., 263 Ky. 568, 92 S. W. (2d) 822. If such disability is shown to be caused by incurable disease or disease not likely to be improved over a period of time, it will be deemed to be permanent, although hope may still be entertained that the patient will recover. Equitable Life Assurance Society v. Preston, 253 Ky. 459, 70 S. W. (2d) 18. Since no definite period of time can be prescribed as a test for the permanency of the disability, in the absence of a stipulation in the contract to that effect, medical testimony will be given great weight in a determination of the question, and, where it is uncontradicted by other medical testimony, physical facts, or sequence of events, it should be

considered conclusive of the question. Kingston-Poca-hontas Coal Co. v. Maynard, 209 Ky. 431, 273 S. W. 34.

Mr. Asbury was superintendent of mines in the employ of the Black Mountain Corporation, earning a monthly salary of $475, at the time of the commencement of the alleged disability, but which salary was reduced to the sum of $425 on March 1, 1940. In October, 1937, he contracted a severe cold and developed an acute infection of the frontal sinuses. He consulted Dr. Gianinni about November 1, 1937, and continuously and daily thereafter was treated by the doctor with the exception of three or four months spent in Hot Springs, Arkansas, where he was under the care of a local physician. Appellee introduced the depositions of Doctors Gianinni and W. P. Cawood which were read in his behalf on the trial. Dr. Cawood testified that he had examined Mr. Asbury and had studied X-Ray pictures of his back; that he was suffering from a severe case of arthritis, which had progressed to the point that the vertebra were fused and the patient was unable to bend his back except from the hips; that his blood pressure was very high; he was suffering from a liver ailment, which was not described; he was a victim of nephritis in an advanced state; and serious impairment of the nervous system was evidenced by a "coarse tremor"; he was afflicted with a serious heart ailment; and, in the doctor's opinion, the patient was unable to work, and his condition was permanent. He advised light exercise with periods of rest but not complete inactivity. Dr. Gianinni by deposition on the 8th day of December, 1939, stated that he had been in attendance on appellee from the first part of November, 1937, and that his condition had remained about the same with the possible exception of the arthritis, which had progressed to the point that Mr. Asbury was unable to bend his back except from the hips; that his systolic blood pressure continuously remained between 200 and 220; that he had a serious condition of the heart and that the doctor had personally witnessed and treated the patient during several severe heart attacks; that he suffered from gastric ulcer and a very serious condition of the kidneys (Brights disease) evidenced by 4 plus albumen in the urine. He said it was extremely dangerous for appellee to exert himself, because he was likely to have a stroke of apoplexy or drop dead at any time. His nervous system was impaired to such extent that it was necessary to prescribe the

taking of sedatives every night; that he kept the patient on a strict diet and required him to take a hot bath every night to ease the strain on his kidneys, nervous system, and digestion; that he had insisted on him resting two hours in the morning and four hours in the afternoon and that he do no work at all. At the request of appellant, appellee submitted to a complete physical examination by one of the most eminent doctors in Louisville. Appellant did not take this physician's deposition nor did it introduce medical testimony at all. Appellee testified that he still retained the title of superintendent of mines of the Black Mountain Corporation but that all of the substantial duties of the position, since November, 1937, had been performed by a temporary superintendent, Mr. Cox, and later by two assistants, Leslie Voltz and Vardy McPeek, who had been employed for the purpose of performing the duties theretofore performed by the superintendent. It appears in evidence that in March, 1940, one of the assistants was given the title of superintendent of mine No. 30 and Mr. Asbury retained the title of superintendent of mine No. 31 with a reduction in salary of $50 per month. Appellee's testimony was corroborated by the two assistants and other important employees of the corporation. They testified that it was the practice of the corporation to retain disabled veteran employees on the payroll of the corporation, when they became disabled in the long service of the corporation, and that Mr. Asbury had been so retained since his disability developed.

One of the material duties of a mine superintendent is to enter and inspect the mines, tipples, and physical properties of the company. The ceilings of the mines of which appellee was superintendent are in places as low as 46 inches. It appears from the evidence that from one-third to two-thirds of one person's time, dependent on conditions, is necessary to perform these functions. It is inconceivable that a person afflicted with arthritis to the point that he can only bend his back from the hips can successfully carry on those duties. The doctors testified he can not, appellee and many other witnesses testified he did not. Other material duties of appellee, before he became ill, were that of representing the corporation in labor disputes and acting as arbiter in labor disputes between union and non-union employees. These duties have been taken over by Mr. Leslie Voltz. The evidence shows that approximately

two days of the week are required in the performance of these duties and that such work requires infinite patience and self-control. A shattered nervous system will not admit of a continuance of such duties, and there is no testimony to the effect that appellee continues in his former employment in this respect. Another of his duties was the inspecting and management of all the corporation's property, including leasing, renting, and repairing of houses and the removal of undesirable tenants therefrom. While there is testimony for appellant to the contrary, all the testimony for appellee is that Mr. Asbury no longer performs these duties, and that they are being performed by Tide Lewis. Another duty formerly performed was that of representing the corporation as its executive in matters of litigation, i. e., determining for the corporation with the advice of its lawyers, the course to take in respect to litigation, and assembling evidence and preparing cases for trial. These duties are now performed by Mr. Will Kusch and Honorable J. B. Snyder. Another material duty attendant upon the duties of mine superintendent, and which was performed by appellee previous to his illness and according to appellee and the witnesses he introduced, is now being performed by Leslie Volz and Vardy McPeek, is the overseeing of the actual cutting, mining, and loading of coal and the inspection of the forests and the cutting, sawing, and inspection of the timber to be used in the mines. Such duties required physical exertion that would be fatal to a man with a serious heart ailment coupled with an involvement of the kidneys. These observations are almost self-evident, although conclusively proven by the testimony of the doctors introduced by appellee. If they were susceptible of contradiction, counsel for appellant undoubtedly would have introduced contradictory testimony, because appellant's case, as well as appellee's, has been prepared with unusual care. Appellee still signs checks requiring 15 or 20 minutes of his time each day; he still verifies pleadings in matter of litigation; he still approves payrolls and time sheets, requiring little time and no exertion. These duties amount to only a minor and immaterial part of the many duties he performed previous to his illness.

Opposed to this evidence, appellant introduced forty or fifty witnesses, a great number of whom had been discharged by the corporation and some of whom had been discharged by appellee himself. Others were shown to

have been opposing parties to the corporation in matters of litigation. The sum and substance of their testimony is that appellee has continuously and without interruption, except when he was in Hot Springs, Arkansas, performed all the functions that he ever performed in his duties as mine superintendent, except in respect to labor disputes; that he is continuously in and around the mines and tipples, and he specifically performs all of the material duties related above and which witnesses for appellee testified that he did not do. In addition to that evidence appellant introduced the transcript of appellee's testimony in several lawsuits tried during the period he claims to have been disabled and his affidavits in verification of certain pleadings filed in the Harlan circuit court. Appellant contends that this testimony conclusively proves that appellee has continued to perform all material acts of his employment. We do not agree. Appellee's testimony in the lawsuits referred to above was to the effect that he was mine superintendent of the Black Mountain Corporation at the time of the giving of the testimony and had been so continuously since 1931. He likewise testified that he had general supervision over the operation of the mines and over the men who work in and around the mines. His testimony in one case related to actual duties performed in employing one worker, but the deposition fails to show those duties were performed after he claims to have been disabled. The worker himself was introduced as a witness and stated that it was in 1938, but his testimony as to the time cannot be read into the testimony of appellee or be considered to be an admission of appellee that he performed the duties he described in his evidence at a time he claims to have been disabled. The affidavits in verification of the pleadings contained the statement that he was general manager and chief officer of the Black Mountain Corporation and the agent of the corporation upon whom service of process might be had in Harlan county. His testimony that he is superintendent, chief officer, and process agent of the corporation is not in contradiction of his testimony in this case. He stated in his deposition in this action that he is superintendent of mines. Every fact and circumstance appearing in the evidence shows this to be true. As such he has general supervision of the mine and employees. Those questions are not in issue. The question at issue is whether he is able to perform substantially all the ma-

terial acts of a mine superintendent. Retaining general supervision of the mine and employees is not at variance with the contention that he is unable to perform the specific duties referred to as material duties of a mine superintendent.

Thus it will be seen that the evidence as to whether appellee had ceased performing, in a substanial manner, the material duties of his employment is conflicting, but there is no evidence which conflicts with the testimony of Doctors Gianinni and Cawood that appellee is afflicted with a serious heart ailment; has Bright's disease in an advanced stage; has dangerously high blood pressure; has a gastric ulcer and chronic, incurable arthritis, rendering it impossible for him to move his back above the hips. It is almost common knowledge that a person so afflicted is totally and permanently disabled but added to the general knowledge of such fact are opinions of the doctors, one of whom had treated appellee daily for over two years, that he was totally and permanently disabled; and their diagnoses and opinions are greatly strengthened by the showing that a doctor of appellant's selection had thoroughly examined appellee and was not introduced as a witness to contradict the diagnoses and opinions of the doctors who testified. It will thus be seen that the evidence in this case falls far short of even raising a doubt in our minds as to the correctness of the lower court's decision.

Finally, complaint is made that the judgment should be reversed because it decreed that appellant should pay appellee $50 per month during the remainder of his life, and does not retain the case on the docket for further orders in the event appellee should recover from his disability. This objection is well taken.

Since this question is discussed at length in the case of Equitable Life Assurance Society of the United States v. Goble, 254 Ky. 614, 72 S. W. (2d) 35, which was approved in the case of Mutual Life Insurance Company of New York v. McElrath, 261 Ky. 321, 87 S. W. (2d) 619, and cases therein cited, we deem it unnecessary to lengthen this opinion with a restatement of the principles enunciated in those cases. The question is no longer controversial in this jurisdiction. On return of the case the court will set aside the judgment and enter one in substantial conformity with the supplemental judg-

410

ment approved in the case of Mutual Life Insurance Company of New York v. McElrath, supra.

Wherefore, the judgment is reversed.

Whole Court sitting, except Judge Ratliff.